### ENOS *against* TUTTLE.

Where *A.*, with a view to keep his property out of the reach of his creditors, and in pursuance of a combination with *B.* for that purpose, sold goods belonging to him as the property of *B.*, and took from the vendee a negotiable note, payable to *B.*, at a future day, which *B.* assigned to *C.*, who was acquainted with the transaction, before it became due ; it was held, in a process of foreign attachment, that such vendee was the debtor of *A.*, and was, therefore, liable to pay to the attaching creditor the amount of the note.

A negotiable note, before it has been negotiated, may be attached on a demand against the payee, liable to be defeated, by the transfer of the note, at any time before it falls due.

A negotiable note, after a transfer fraudulently made, to protect the debt from creditors, may also be attached on a demand against the assignor. In such case, however, a judgment in favour of the attaching creditor, against the debtor, will be no bar to the claim of the assignee, he being neither party nor privy ; but the debtor, if subsequently assailed, by the assignee, must recur to the merits of his case for a defence.

*Qu.* Whether this inconvenience may not be obviated, by a bill of interpleader, brought by the debtor, against the attaching creditor and the assignee.

*June* 16.

THIS was a *scire-facias*, in a process of foreign attachment, tried at *Hartford*, *February* term, 1819, before *Trumbull*, *Hosmer*, and *Peters*, Js.

The absconding debtor, was *Green Bixby*. He had taken some horses to *Hartford*, and, claiming to act only as the agent of *Julius Bixby*, had sold them as his property, to the defendant ; for which the defendant gave a promissory note, dated the 24th of *September*, 1816, for 152 dollars, payable to *Julius Bixby*, or his order, at a future day. Before this note became payable, *Julius Bixby* assigned and endorsed it over to *Peter B. Guernsey*, who now holds it, claiming it as assignee. The plaintiff produced evidence to prove, that the horses were in

*New-Haven,*
June,
1819.

*Enos*
*v.*
*Tuttle.*

fact the property of *Green Bixby ;* and that, to keep them out of the reach of his creditors, he fraudulently combined with *Julius,* and agreed with him, that he, *Green,* would take the horses from the state of *New-York,* into this state, and here sell them as the property of *Julius,* and receive in payment negotiable notes, payable to *Julius,* or order, at a future day ; and that after the defendant was served with process, *Guernsey,* knowing of the fraudulent combination and practices, by which the note in question was obtained, took an assignment of it from *Julius.* The plaintiff, therefore, claimed, that the defendant, at the time he was served with process, was the debtor and trustee of *Green Bixby.* The defendant claiming that the whole transaction was *bona fide,* introduced evidence to prove, that the horses were the property of *Julius,* and not of *Green ;* that *Julius* sold and endorsed the note to *Guernsey,* for a full and valuable consideration, on the 20th of *October,* 1816, before it became payable, and before the defendant was served with process ; and that *Guernsey* had no knowledge of any fraudulent combination or practices, if any existed. The court instructed the jury, that the defendant, by purchasing the horses, and giving this note payable to *Julius,* became the debtor of *Julius,* and of his assignees, only ; and did not thereby become, nor ever was, at any time, the debtor or trustee of *Green.* The jury accordingly found a verdict for the defendant ; and the plaintiff moved for a new trial, on the ground of a misdirection. The court reserved the motion.

*Staples* and *Trumbull,* in support of the motion, contended, 1. That the note in question was the property of *Green Bixby.* The consideration passed from him. The privity of contract was between him and the defendant ; and he was the real creditor of the defendant. The taking of a note payable to *Julius,* for a fraudulent purpose, cannot alter the nature of the transaction. The debt was still due to *Green.* 1 *Stat. Conn. tit.* 14. *c.* 1. *s.* 5.

2. If the defendant was the debtor of *Green Bixby,* the court cannot say, that the plaintiff shall not recover, because third persons may have claims. The subject matter of this suit is within the jurisdiction of the court, and is properly before them. The assignee cannot interpose his claim to defeat the plaintiff's rights. *Hull* v *Blake,*

13 *Mass. Rep.* 153.  *Decoster* v. *Livermore,* 4 *Mass. Rep.* 101. <span style="float:right">*New-Haven,*</span>
*Milne* v. *Moreton,* 6 *Binn.* 353.

3. That the negotiable form of this note could make no dif-
ference in the case ; for if the property of it was not in *Julius
Bixby,* at the time of the service, his subsequent assignment
could not transfer any right.   A negotiable note, until negotia-
ted, is as liable to foreign attachment as any other security.

*N. Smith* and *T. S. Williams,* contra, contended; 1. That the
note in question, being a negotiable instrument, could not be
reached by process of foreign attachment.   It is clear, that af-
ter this paper was sent into the world, its negotiability could
not be arrested, by a third person.   If it could not be, then it
must be fruitless to attach ; because an assignment would in-
stantly defeat the attachment.

2. That foreign attachment would not lie in this case, be-
cause it would involve the rights of third persons, who are not
before the court.

3. That if this process be sustainable, *Julius,* and not *Green
Bixby,* is the trustee.   The horses were sold as *his ;* and *he*
took the pay.   A judgment against the defendant, in favour of
the present plaintiff, would not protect him against *Julius Bix-
by,* and his assignee.   The statute, being in derogation of the
common law, is to receive a *strict* construction.

HOSMER, Ch. J.  There exists no doubt, that a debt due, or
negotiable note, before it has been negotiated, may be at-
tached on a demand against the payee, liable to be defeated
by the transfer of the note, at any time before it falls due.
And even after the transfer, if it was merely voluntary, or
fraudulently made, to protect the debt from creditors, it
is attachable in the same manner.   In *Starr* v. *Tracy* & al.,
2 *Root,* 528. it was determined, that the goods of an abscond-
ing debtor, covered by a fraudulent conveyance, were liable to
a foreign attachment for his debt.

Was the money due from the defendant on a promissory
note, the right of *Green Bixby?* This is the principal question.
The act concerning absconding debtors, was made, as the
preamble declares, " for the better preventing fraud and de-
ceit, sometimes designed and practised, by ill-minded debtors,
who betrust their goods &c. in the hands of others, with intent
to reserve and secure the same to their own use, and thereby

New-Haven,
June,
1819.

Enos
v.
Tuttle.

defeat their creditors of their just dues." (a)  For the pro-- motion of this object, it should receive the most liberal con struction.  In *Bottomly* v. *Brooke*, and *Rudge v. Birch*, cited 1 *Term Rep.* 621, 2. a debt was set off against the *cestui que trust* of a bond, sued in the name of the trustee.  Any equi- table demand has been adjudged to be a credit.  " A legacy due from an executor, who admits assets, is, in equity, a *debt* due from such executor; and an equitable demand is a debt within the statutes of bankrupts."  *Jeffs* v. *Wood* & al. 2 *P. Wms.* 128, 131.  Upon the same principle it is, that a bond, assigned for a valuable consideration, and *bona fide*, cannot be attached on a demand against the obligee, because in equity it is the property of the person to whom it is assigned.  *Fobs* v. *Brewster*, 1 *Root*, 234.

I think it unquestionably clear, that the *debt* from the de- fendant, within the meaning of that term, as it is used in the statute concerning absconding debtors, was due to *Green Bix- by.*  It is not pretended, that he was the legal creditor, but in equity, the money due is his, precisely as if he were the as- signee of the note.  The transaction being stripped of the covering interposed by fraud, it is no strained interpretation to consider the defendant as his debtor.  The reason and spir- it of the statute imperiously require it.  If the forms thrown around the demand are available, the object of the law is de- feated.  A judgment, I admit, rendered against the defen- dant, will be no bar to the claim of *Guernsey.*  It is only a shield to parties and privies ; and beyond this, if assailed, *Tuttle* must recur to the merits of his case for a defence. This is no peculiar hardship ; and perhaps the danger and inconvenience may be obviated, by a bill of interpleader brought against *Enos* and *Guernsey.*  Be this as it may, the charge to the jury was incorrect ; and I would advise a new trial.

The other Judges were of the same opinion.

New trial to be granted.

(a) *Tit.* 14. *c.* 3. *s.* 1.