## JAMES ADAMS, CYRUS ADAMS, & FRANCIS ADAMS, Plaintiffs in Error.

*vs.*

## ELIHU D. FILER, Defendant in Error.

ERROR TO MILWAUKEE COUNTY COURT.

A plea *puis darrien continuance* is a waiver of all other pleas, and where it sets up matter in avoidance admits the cause of action well pleaded in the declaration.

In proceedings by attachment the garnishee may be examined on oath, and if his answer is not satisfactory to the plaintiff, an issue may be made up and tried by a jury as in other cases.

attachment, where the plaintiff, the defendant, and the garnishee are all made parties to the proceedings, and the garnishee answers in good faith, it would seem that all the parties are bound by the judgment, it being *inter partes* to the record.

In proceedings in attachment where the garnishee appears and answers, and judgment is rendered against him for the value of property in his hands, adjudged to be the property of the defendant in the attachment, such judgment does not conclude a third person, not a party to the proceedings claiming title to the same property.

In order to conclude such claimant and relieve the garnishee from liability, it is not sufficient that the latter merely notify such claimant of the pendency of the garnishee suit, but must request him to defend, and tender to him the conduct of the defence of the suit.

If the garnishee know of an assignment of a debt, or claim of title to property in his hands, and make no mention of it in his answer, the judgment against him will be no protection against an action by such assignee or claimant.

Where the vendee of certain property (tobacco,) was garnisheed, and the property alleged to belong to another person, the defendant in attachment; in order to protect himself against his vendor, the garnishee should not only notify his vendor that his title was thus attacked, but should tender to him the defence of such title in the garnishee proceedings.

A. purchased a certain quantity of tobacco of F., which was duly delivered. Shortly afterwards, A. was garnisheed in a suit by attachment between Arkenburgh & Co., against Francis & Co., and the tobacco alleged to be the

property of the latter. On the trial of the issue therein the tobacco was found to be the property of Francis & Co., and judgment for its value was rendered against A. During the pendency of the proceedings A. gave no notice thereof to F. nor requested him to defend his title therein. In a suit by F. to recover the purchase money of A. for the tobacco, it was held that the judgment against A. was not a defence or bar to such action.

A judgment in attachment against a garnishee is not a bar to an action by a, stranger to such proceedings.

A notice of special matter appended to the general issue is not binding (as in, case of a special plea) upon the party giving it, as an admission of the matters, contained therein, and is notice to no party or parties in another suit.

Filer, the defendant in error, brought suit against the. Adamses plaintiffs in error upon a contract of sale of a certain quantity of tobacco, valued at some $3000 or more. The declaration set out the contract of sale, by which Filer sold and delivered to the Adamses the tobacco, for which the latter agreed to give their promissory notes for the amount. The defendant pleaded the general issue with notice of special matter.

After the delivery of the tobacco by Filer, and before the delivery of their notes by the Adamses, the latter were garnisheed by Arkenburgh & Co., judgment creditors of Francis & Co., alleging the tobacco to be the property of said Francis & Company.

This suit was continued on application of the defendants on account of the garnishee proceedings, the plaintiff (defendant in error) opposing the same. A commission was issued to take testimony in relation to the title to the tobacco, the property in question, in a garnishee suit, in which the attorneys for the defendant in error were requested to join, but they did not. On the final hearing in the garnishee proceedings, the tobacco was decided to be the property of Francis & Co., and. the plaintiffs in error were adjudged to pay the value thereof to Arkenburgh & Co.

The plaintiffs in error then pleaded *puis darrien continu-*

*ance,* as a defence to the action in this case, the adjudication and recovery in the said garnishee proceedings.

The issue was tried by a jury, when the counsel for the plaintiff read the pleadings on file in this case, and rested. Whereupon the counsel for the defendants moved the court for judgment of nonsuit against the plaintiff, on the ground that the declaration was on a special contract, the breach alleged being the non-delivery of the promissory notes, and not having offered any evidence of the value of the tobacco, nor any proof of damages, he was not entitled to a recovery, which was overruled by the court, and the defendants excepted.

The counsel for the defendants then offered to read in evidence, the records of the suits of R. H. Arkenburgh and John Bryan against Thomas Francis and Richard Francis, and the proceedings and judgments in garnishment, in the defendants' plea pleaded, and also the first plea and notice of the defendants in this suit, and a motion and order for a continuance thereof, to which the plaintiffs' counsel objected, as the facts alledged in the plea stood admitted, and that they were admissible only to show the issuing of a commission; for which purpose said records were then read in evidence, whereby it appeared that a commission, duly issued in said garnishee proceedings, on the part of the plaintiffs therein, to take proof as to the ownership of the tobacco in question in said garnishee proceedings, and also that this cause was continued before the issuing of such commission because of the pendency of said garnishee proceedings, and that the plaintiffs' counsel opposed such application for a continuance.

The counsel for the defendants below, (now plaintiffs in error,) then called John H. Van Dyke, of the firm of Emmons & Van Dyke, who testified as follows:

"I know of the existence of the two garnishee proceedings by Arkenburgh & Bryan under their attachment writs against

Francis & Co. Emmons & Van Dyke were Arkenburgh & Bryan's attorneys in those suits and proceedings, and I had particular charge of them. Commissions were issued to take testimony in New York, and I believe I applied to Mr. Adams to join in the commissions; he did not join. I learned that Smith & Salomon were Filer's atto neys, and I applied to Salomon to join in the commissions; it was in February, 1857, and after the continuance of this suit, on the application based upon the existence of the garnishee suits. Salomon opposed that continuance in court. Salomon declined to join in the commission."

The counsel for the plaintiff called E. Salomon and Winfield Smith, who testified in substance that they were the plaintiff's attorneys in this case, and were retained by Mr Ryan to manage the attorney business in the suit, as distinct from the counsel business. Ryan was Filer's counsel; "that Van Dyke came to their office and said it was necessary to issue commissions in the garnishee suit, and asked us to join therein, as Adams had no attorney;" that they declined to do so, as they were only attorneys and had no authority to appear for Filer, and had never been retained by the Adamses. The offer to join in the commissions came from Van Dyke as the attorney of Arkenburgh & Co. Van Dyke appeared for the Adamses in this suit. He made no offer or proposition as coming from the Adamses, nor did he apply to Smith & Salomon on behalf of the Adamses.

Upon the foregoing evidence, the counsel for the defendants (plaintiffs in error) requested the judge to charge the jury as follows:

1. "If the jury find that the plaintiff had reasonable notice of the pendency of the garnishee proceedings against the defendants, and had an opportunity presented him to defend such proceedings, the judgments therein against the defendants are a good defence to this action;" which instruction the

judge declined to give, on the ground that the phrase "had an opportunity," was too indefinite; and instructed the jury as follows:

"If the jury find that the plaintiff, Filer, had seasonable notice of the pendency of the garnishee proceedings against the defendants, and was requested by the defendants to defend such proceedings, the judgment therein against the defendants is a good defence to this action."

To which the defendant's counsel excepted; and further, that "A request made upon the attorney of Filer, and whom he had employed to look after and protect his interest in regard to his claim for the tobacco, alleged to have been sold to the defendants, to appear and defend in the garnishee proceedings, if made after Filer had had notice of the pendency of the garnishee proceedings, would be sufficient to enable the defendants to protect themselves under the judgments in the garnishee suits;" which instruction the judge gave in the affirmative, with the following qualification: "But proof that any person was employed only to prosecute this suit, would not be sufficient proof of such general agency in regard to plaintiff's claim to said tobocco;" to which the defendant's counsel excepted. The defendant's counsel further requested the judge to instruct the jury as follows: "That the plaintiff could recover but nominal damages, there being no evidence of the value of the tobacco;" which instruction the judge declined to give, and instructed them as follows: "If the jury find for the plaintiffs, the measure of his damages is the principal of the notes mentioned in the declaration, with interest from their maturity;" to which the defendant's counsel excepted.

The judge further instructed the jury as follows:

1. That the plaintiff is entitled to recover in this action the amount of the notes mentioned in the declaration, with interest from their maturity, unless the defendants have shown

that they requested the plaintiff to defend the garnishee proceedings; to which the defendants' counsel excepted.

2. That if any person so requested the plaintiff to defend the garnishee proceedings, it must be proved that such person had authority from the defendants to make such request, or the plaintiff must recover; to which the defendants' counsel excepted.

3. That such request should be distinct and in such terms as to be clearly understood by the person to whom made; to which the defendants' counsel excepted.

4. That such request must be made seasonably.

5. That such request must be made of the plaintiff, or some person authorized by him to receive it; and that it is not sufficient evidence of such authority that the persons of whom the request is made are attorneys for the plaintiff in this action; to which the defendants' counsel excepted.

6. That it was competent for the defendants to plead "*puis darrien continuance*" the matters now pleaded by them, and in addition, that the tobacco sold to Messrs. Adams was the property of Francis & Co., and not of Filer, at the time of such sale; to which the defendants' counsel excepted.

7. That the allegations of the declaration are to be taken as true, and no evidence need be offered to sustain them, unless as to the common counts; to which the defendants' counsel excepted.

8. That the plaintiff would not be at liberty on this trial to introduce evidence as to the title of the tobacco, inasmuch as the question is not put in issue by the defendants' plea; to which the defendants' counsel excepted.

Under the foregoing charge of the court, the jury returned a verdict for the plaintiff for the sum of $3,124.35, upon which judgment was entered, to reverse which this writ of error was sued out.

*Emmons & Van Dyke,* for the plaintiffs in error.

1. The county judge erred in refusing the first instruction asked for by the defendants.

The substantial ground taken below was, that Filer was not a *party* to the attachment suit, and hence was not bound by the judgment. This position is unsound and untenable. None of the cases, which hold that a garnishee, against whom there has been a recovery, shall be protected in a subsequent suit, proceed not upon the notion that the plaintiff in the second suit was a party to the former, but upon the broader ground that the payment by the garnishee was compulsory and that the debt or property was taken from him by process of law. *Embree vs. Hanna,* J. R., 101 ; *Foster vs. James,* 15 Mass., 185 ; *McDaniel vs. Hughes,* 3 East, 136, and cases cited by Kent J. in *Embree vs. Hanna.*

Because the statute provides, that any person having property, credits or effects in his possession, belonging to the defendant in the attachment suit, or is indebted to such defendant, may be summoned and compelled to pay such indebtedness or to surrender the property or effects in his hands, the court say he shall be protected—the payment or surrender is compulsory upon him, and it makes no difference that the property or debt in his hands belonged to or was claimed by another, then the nominal defendants in the attachment. So long as the garnishee acts in good faith, the recovery is equally conclusive in his favor. *Enos vs. Tuttle,* 3 Conn., 57. One reason given why the garnishee should be protected is, that *no right* of the party claiming over has been concluded. If the recovery of the garnishee was wrongful, as if the plaintiff in attachment had recovered upon a fictitious demand—even the defendant in the attachment suit could sue and recover from the plaintiffs therein, what had been thus wrongfully obtained from the garnishee. This principle is distinctly asserted by Kent J. in *Embree vs.*

*Hanna,* 5 John, 10. And to the same point see *Phillips vs. Hunter,* 2 H. Black.; *Mayor vs. Foulkrod,* 4 Wash. C. C. Rep., 503 ; *Bank N. A. vs. McCall,* 3 Binney, 338. In *Phillips vs. Hunter* and *Bank of N. A. vs McCall,* third persons owning what had been recovered from the garnishee, were held entitled to recover it back from the plaintiff in the attachment suit.

In no case is it said that the garnishee is protected, because the person suing again was nominally a party to the former suit—but the only reason given is that above stated, that the payment was compulsory, and the property taken from him by process of law. *Fitzgerald vs. Caldwell,* 1 Yeates, 274 ; *Irvine vs. Lumberman's Bank,* 2 Watts & Serg., 190 ; *Killsa vs. Lermond,* 6 Maine, 116 ; *Holmes vs. Remsen,* 20 John., 229, 268 ; *Barrow vs. West,* 23 Pick., 270. In *Lawrence vs. Lane,* 4 Gilman, 354, the principle is dictinctly recognized, but upon the peculiar circumstances of the case, and because there was evidence of collusion between the garnishee and the plaintiffs in the attachment, the court held him liable in the second suit. In *Smart et al. vs. Eslava,* 23 Ala. Rep., 659, as between the assignee of a claim in action and a garnishee, against whom a recovery had been had, in suit against the assignor, the Court held the garnishee should be protected. *Emmons vs. Dowe,* 2 Wis. Rep., decides nothing against us. The conclusion there was, that it did not appear from the record that the recovery against Wall, the garnishee was for the *same goods* involved in the trover suit against Emmons.

2. But assume, for the argument sake, what was assumed by counsel below, and supported by the court, that the case is to be likened to one of a vendee of chattles defending on the ground of a failure of title, and seeking to give in evidence a judgment against him by a stranger. Upon such ground even the judgment was competent evidence, and the court erred in refusing the first instruction asked for by defendants.

Notice to Filer of the pendency of the former suit was sufficient. It was unnecessary that he should have been required to defend. *Bartlett vs. Campbell*, 1 Wend. 50 ; *Barney vs. Dewey*, 13 Johns 224. In *Swartwout vs. Payne*, 19 John, 296, Spencer J., says : " Had the defendant been notified of that suit, and required to attend the trial and furnish evidence to enable the plaintiffs to recover, I should have considered that trial as conclusive, but the defendant had no such notice." Several authorities are cited by him, but they each distinctly assert that notice of the former suit is sufficient, in none of them is it determined that the party sought to be bound should be requested or required to defend. *Blasdah vs. Babcock*, 1 J. R. 517 ; *Kip vs. Brigham, et al.*, 6 J. R. 158 ; *Brigham vs. Kip*, 7 J. R. 168 ; *Armstrong vs. Percy*, 5 Wend. 535 ; *Duffield vs. Scott*, 3 Term Rep., 374 ; *Hamilton vs. Cutts, et al.*, 4 Mass. 353 ; *Brewster vs. Countryman*, 12 Wend. 450 ; *Beers vs. Pinney*, 12 Wend. 310.

Upon the issue and proofs, the plaintiff was entitled to but nominal damages, and the court erroneously refused the instruction asked for by defendants on this subject. 1 Cow. and Hill's notes, 614 ; *Wagner vs. Bells*, 4 Monroe 7, 12 ; *Haley vs. Callar*, 1 Ala. 63; *N. Y. Dry Dock Co. vs. McIntosh*, 5 Hill 290.

*E. G. Ryan*, for the defendant in error.

1. The whole *onus probandi* lay upon the plaintiffs in error.

The plea *puis darrien continuance* abandoned all grounds of defence existing at the commencement of the suit.

This case is to be distinguished from an action on the common counts, or for unliquidated damages. The declaration sets forth a special contract, by which the defendant in error sold and the plaintiff in error bought a specified quantity of merchandize for a specified sum, to be paid at specified

dates by the promissory notes of the plaintiffs in error, and a breach by the plaintiffs in error. This was all admitted by the plea, leaving nothing for the defendant in error to prove.

No proof of damages was necessary. The plea sought to avoid them, but admitted them, as specially pleaded. See 1 Greenleaf's Ev., § 27, 527 a 528 ; 2 Ib., § 74, 75, 76 and note ; 1 Chitty's pl., 525 ; *Waggener vs. The Bells,* 4 Monroe, 7.

2. The Garnishee proceedings set up by the plaintiffs in error were *res inter alios acta,* not binding on the defendant in error ; he was neither a party nor a privy. 1 Greenleaf's Ev., §§ 189, 523, 527 a, 528, 535, 536 ; 2 Phillips' Ev., 4 to 13 ; *Case vs. Reeve,* 14 J. R. 81 ; *Prescott vs. Hall,* 17 J. R. 284 ; *Burrill vs. West,* 2 N. H., 190 ; *Wood vs. Davis,* 7 Cranch, 271 ; *Davis vs. Wood,* 1 Wheaton, 6 ; *Schaffer vs. Gates,* 2 B. Monroe, 453 ; *Englehard vs. Sutton,* 7 How. Miss. 99 ; *Clark vs. Grayson,* 2 Ark. 149 ; *Morris vs. Lucas,* 8 Blackf. 9.

In the strongest construction of the rule for the plaintiffs in error, unless the defence of the garnishee proceedings was tendered by the plaintiffs in error to the defendant in error, in time for the latter to have directed and controlled the entire defence to them, the record of those proceeedings cannot bind the defendant in error. A mere offer to the defendant in error to join in a commission, if proved, would be inadequate to bind him. Any offer from any source, without the authority of the plaintiffs in error, and on their behalf, would be inadequate. The evidence offered by the plaintiffs in error did not even tend to prove such an offer to the defendant in error to defend, as to make the proceedings binding upon him. The instructions of the court below were correct, and the question of fact whether a proper offer to defend had been made, was fairly submitted to the jury.

Under any other rule, any debtor might, by collusion with third persons, make a record to bar his creditor's demand, without giving the latter his day in court.

The authorities sustain these positions. *Lawrence vs. Lane,* 4 Gilman 354: *Jones vs. Kolisenki,* 11 Ala. 607; *McClellan vs. Young,* 17 Ala. 498; *Burton vs. Hagard,* 4 Harrington, 100; *Hawes vs. Waltham,* 18 Pick. 451.

Most of the cases relied on for the plaintiffs in error in the court below, were either cases where the judgment offered in evidence was between the same parties or their privies, or where the party held bound had full opportunity to assert his right. But few of them need notice. *Phillip vs. Hunter,* 2 H. Blacks. 402, was a case turning on the English Bankrupt law, in which a recovery abroad by an attaching creditor, was held to be for the use of the assignee of the bankrupt. That case does not affect this question. *Hale vs. Blake,* 13 Mass. 153, is a very peculiar case, resting upon the principle of comity towards the court of another State; and goes upon the assumption that by the law of Georgia, the creditor of the payee of a promissory note may recover against the maker, notwithstanding the due negotiation of the note. See *Parker vs. Danforth,* 16 Mass. 364. The sound general principle is not really disturbed by this very doubtful authority. *Mayor vs. Foulkrod,* 4 Washington, 503, a circuit court decision never reviewed, is found in the reports of the judge who decided it, which have never attained much weight as authority. This case is certainly against the general principles asserted by the authorities, and seems to rest on the extraordinary assumption that the person entitled to the demand could sue him who had recovered it, and not him who owed it to him. The decision is entitled to very little consideration either on account of its own weight, or the tribunal which decided it. See comments on this case, 2 Cowen, and Hill's Notes, 167.

*Emmons vs. Dowe,* 2 Wis., 322, cited also against us below, is clearly with us. The reasoning of the court in that case, (see p. 359) is almost precisely our reasoning here; and our case is a much stronger one than that, for there Dowe himself

Adams vs. Filer.

was a garnishee, and was held not bound by a judgment against his co-garnishee in the same cause.

3. The agency of an attorney is limited and special. A retainer as attorney in a suit, is strictly limited to the prosecution or defence of that suit. *Herbert vs. Alexander*, 2 Call, 418; *Vail vs. Conant*, 15 Verm., 314. But the exception on this point is immaterial, because no adequate offer was made to the attorney.

4. The sixth instruction of the court below was wholly immaterial. It was of no consequence on the trial what the plaintiffs in error might or might not have pleaded, other than they did in fact plead. It is therefore unnecessary to consider whether the abstract proposition of the instruction be correct or not.

5. The eighth instruction is clearly correct. The title of the tobacco was not in issue, but only the opportunity of the defendant in error to defend against the garnishee proceedings. This instruction was also immaterial.

6. The amendment of the verdict by the jury was properly permitted. *Bolster vs. Cummings*, 6 Greenl. 85; *Tyrrell vs. Lockhart*, 3 Blackf. 136; *Edelen vs. Thompson*, 2 Har. and Gill, 31.

*By the Court*, SMITH, J. The first error complained of in this case, is the refusal of the judge below, to nonsuit the plaintiff. But this could not be done under the state of the pleading then existing. The defendants had pleaded *puis darrien continuance*, which was a waiver of all other pleas, and admitted the cause of action as set out in the plaintiffs' declaration. *Alder vs. Wise*, 4 Wis., 159; *Culver vs. Barney*, 14 Wend., 161; Chitty Pl., 697, 698.

It is also alleged that the court erred in sustaining the demurrer to the defendant's plea. But as the pleadings are

not set out in the printed case, we do not feel called upon to examine the point.

The other and principal points on which the plaintiffs in error rely to reverse the judgment of the court below, arise out of the instructions given to the jury, or witheld from them against the request of the plaintiffs in error, to which exceptions were taken on the trial.

This case brings under review the several provisions of our attachment law in relation to garnishees, a law difficult to be so framed, and still more difficult to be so administered as to do exact justice to all the parties affected by its operation. The law provides for the attachment of property and credits of the defendant in the hands of a third person, and for the summoning of such person as garnishee, and for his examination on oath touching the property, credits, or effects, in his hands belonging to the defendant. If his answers are satisfactory to the plaintiff, the judgment of the court may be taken thereon; but if not, an issue may be made up, and tried by a jury as in other cases. In this case such an issue was made up, on which the jury rendered a verdict in favor of the plaintiffs in the attachment; on which judgment was rendered. It is contended that this judgment is an absolute bar to the right of the plaintiff below to recover.

It should be observed that the parties in the attachment suit were Arkenburgh & Co., plaintiffs, against Francis & Co., defendants, and the present plaintiffs in error as garnishees of Francis & Co. The defendant in error was in no sense a party to the suit, but was a stranger thereto. He did not appear therein, nor was any process served upon him by which the court obtained jurisdiction of his person. He had no day in court.

It is insisted that the payment of the judgment by the Adamses was compulsory; that the debt or property was taken from them by process of law, and that they should therefore be protected.

It would seem to be unjust that a debtor can be compelled to pay his debt to the creditor of his creditor by the judgment of a court of competent jurisdiction, and still remain liable to the latter, or be compelled to pay it twice. And it also seems unjust that a creditor shall be compelled to lose his debt by any proceedings by or among strangers, to which he has not been made a party, or had any opportunity to be heard.

Ordinarily the creditor of the garnishee is the defendant in the attachment, and has not only the opportunity to contest the original cause of action, but also the liability of the garnishee. In such cases it is tolerably well settled that when the garnishee acts in good faith the party would be bound by the judgment. A sues B by attachment, and attaches property in the hands of C, which is alleged to be the property of B. On the trial the property is found to belong to B, the defendant in the attachment. As between A, B and C, this judgment is conclusive. But does this proceeding settle the title to the property against all the world? Is D, who may claim the property, bound by this proceeding whether C, the garnishee chose or not to disclose his title on the trial? Suppose the property in the hands of C was a horse, placed there by B for keeping, and attached by A, as the property of B, and it should be so adjuged; would that judgment bind D, the real owner? Suppose the tobacco which was the subject matter in controversy, had been replevied from the Adamses by Francis & Co., this would be a compulsory process of law equal in dignity, at least, to a garnishee process; but would the judgment in such case conclude Filer, the vendor of Adams, unless Filer had had the proper opportunity to defend his title in that suit? Most of the cases cited by the plaintiffs in error are such as involve the right of the respective parties in the attachment suit, viz: the plaintiff, the defendant, and the garnishee; and as to such parties we see no reason why the judgment against the garnishee, provided he has acted in good

faith, should not be binding upon the defendant in attachment, he being a party to the suit. At all events such seems to be the prevailing doctrine, even in proceedings by foreign attachment, in which the defendant has not been served with process. It was not, however, so settled without a struggle. But the proceeding was *inter partes* to the record, and at all events binding upon all the property of the defendant found within the jurisdiction.

The reason urged by the counsel for the plaintiffs in error, why the judgment should be a protection to them, because the payment thereof by them was compulsory, or what is more in point, the property or its value was taken from them by process of law, is not without force. But let us examine its true weight, and see whether the same reason will not apply to many other inevitable evils, owing to the inherent defects in the administration of justice.

Suppose Arkenburgh & Co., had claimed the tobacco in their own right, and had sued the Adamses in trover for its value and had recovered : would that recovery be a bar to an action by Francis & Co., claiming the title ? Would it have concluded Filer ? If it would not conclude Filer, then it would interpose no legal impediment to his recovery, and the same administrative anomaly would be presented as in the case before us. Juries do not always find the same verdict upon the same state of facts, and unfortunately courts do not always agree in their application of the law. Until absolute perfection can in all cases be attained, injustice will sometimes be done. Even courts of equity with all their flexibility, are not always equal to the demands of absolute justice. Certain principles of jurisprudence and rules of administration, must be observed, to depart from which on the supposed exigencies of a particular case, would be a greater evil than the temporary injury of an individual which the law could not redress or prevent without an infraction of those principles.

One of the fundamental principles of jurisprudence in all civilized countries, is that every person is entitled to his day in court: that his rights of person, reputation, or property shall not be concluded, unless he has been brought into court in some manner, and made a party to the proceedings involving such rights. It can scarcely be necessary to quote authorities to sustain this principle, for it lies at the very foundation of the common law system of jurisprudence. Sir William Blackstone, in his commentaries, book 3, p. 316, says, " the court can determine nothing unless in the presence of both parties in person, or by their attorneys, or upon default of one of them, after his *orignal appearance,* and a time fixed for his appearance in court again."

I could go on and cite from all writers upon elementary law this requisition as a fundamental, primary, indispensable condition in all judicial proceedings, whereby a party should be bound, that he should have had his day in the court which may have condemned him; in other words, that he should in some manner, recognized by the forms of law, become a party or privy to the proceedings, by the record of which he is sought to be charged or concluded.

It is no answer to a claim of property set up against me, by A, that in a trial between me and B, the title was adjudged to be in me; or that in the same proceeding the title was adjudged to be in B, and that I had been compelled to deliver it over, or respond for its value. I have no reference here of course, to the effect of a judgment upon privies in estate or otherwise; for the rule in such cases, it is conceded, has no application to the case under consideration. I have a right to try my title, or have my rights adjucated by a competent tribunal of my own selection, or by a competent tribunal before which I am lawfully called to defend or protect my rights.

In some states, and in some cases, by statute a mode of service is provided, whereby a person is sought to be brought

within the jurisdiction of the court, other and different from personal service. Sometimes this is effected by seizing the property of the defendant within the jurisdiction, and thus compelling an appearance; in other cases notice by publica tion of the pendency of the suit is made, for certain purposes, equivalent to the personal service of the process of the court. But in all these cases the principle is recognized that the party whose rights are concluded by the judgment of a judicial tribunal, must have his day in court: that is, he must have an opportunity to be heard, and be made subject to the jurisdiction of the tribunal by service of its process or its equivalent.

There is a class of cases where the officer of the law is protected against all parties, in the proper execution of the specific process of the court; as when an officer executes a writ of replevin by seizing the particular property named in the writ according to the command thereof; or in the execution of a search warrant; or a warrant for the arrest of a person named, &c., &c. But this protection extends to the officer only, and by no means applies to the parties who call into operation the agencies and instrumentalities ot the law.

The pleadings here reduce our inquiry to a very narrow compass. The Adamses do not defend by a direct impeachment of the title of Filer, their vendor, but they waive every defence of that kind, which may be ordinarily available between vendor and vendee, and claim that the record of the judgment and its satisfaction preclude any further demand or inquiry as to them. The title of Filer is not put in issue by the defendants' plea, every plea or defence being waived except that set up by the plea *puis darrien continuance.*

It appears that the attachment suit against Francis & Co., was continued at one or more terms to procure evidence, and that this suit of Filer against the Adamses was also continued at the same terms. Messrs. Emmons & Van Dyke prosecuted

Adams vs. Filer.

the Adamses in the garnishee suit, and defended them in the suit of Filer against them. Mr. Van Dyke applied to the Adamses to join in a commission to take testimony in New York, and they did so. He also applied to Mr. Salomon, of the firm of Smith & Salomon, who were the attorneys of Filer in this suit, to join in the commission, who declined. Except this offer by Mr. Van Dyke, the attorneys of Filer, Smith & Salomon, had no proposition or application made to them to defend the garnishee proceedings. The Adamses, nor any one in their behalf, offered or requested Filer to defend. They gave no notice to Filer or to Smith & Salomon, or to any one in behalf of Filer, of the pendency of these garnishee proceedings.

We are therefore clearly of the opinion, that the record of the proceedings in the garnishee suit did not conclude Filer's rights, unless the Adamses discharged their duty in the premises. And we are also of the opinion that to protect themselves, the garnishees should have not merely notified Filer of the pendency of the proceedings, but that they should have also tendered to him the conduct of the defence; or in other words, requested him to defend. The essence of the garnishee's equity consists in the fact that he has done his full duty, and has been compelled to pay; for if he pay when he is not legally bound to do so, he cannot avail himself of such payment. *Flower vs. Parker*, 3 Mason, 247; 8 Blackf., 418; 1 Binn., 25; 4 Watts, 390; Drake on attachments, § 732, *et seq.* In *Prescott vs. Hull*, 17 J. R., 284, it was held that when the garnishee knew of an assignment of the debt in his hands, and made no mention of it in his answer, the judgment against him will be no protection to him against an action by the assignee. 3 Porter, 175, 229; 9 Robinson, (La.) 453; *Swartwout vs. Payne*, 19 J. R., 294, and authorities there cited.

All these cases, and very many others which might be

cited, show that the garnishee has a duty to perform, even in reference to the defendant in the attachment suit, in order to shield himself by the record of the judgment therein. We have already seen, from the authorities before cited, how strictly he is held to the performance of all his duties where the rights of an assignee of the debt may by possibility intervene. How much more sternly would the law require of a vendee, a faithful vindication of the title of his vendor when thus assailed; or in the want of such vindication, a full relinquishment and tender of the conduct of the suit wherein the title of the property was brought in issue.

In this case, the Messrs. Adams do not appear to have taken the first step to apprise their vendor, Filer, that the title which they had acquired by purchase from him had been called in question. They have given him no notice of the garnishee process served upon them. They have not invited or requested him to defend his title. Furthermore, after the tobacco had been attached in their hands as garnishees, alleged to be the property of Francis & Co., instead of giving Filer notice that his title to the tobacco was questioned by the garnishee process, and that therefore his sale to them might be unwarranted, they seem to have gone on and appropriated the tobacco to their own use, the possession of which they had obtained from Filer by virtue of their purchase from him. They do not seem to have repudiated the sale of the tobacco by Filer to them; when, as alleged by them, the title to the tobacco was found to be in Francis & Co. We do not find that they offered to deliver the same to the plaintiffs in the attachment, or that they gave Filer any opportunity to contest his title, but that they availed themselves of the possession which they obtained by means of their purchase of Filer, and through that means, used the property in specie, risking their liability to the real owner for its real or agreed value, as the case might be.

Undoubtedly it was competent for the Adamses to contest the title to the tobacco in this suit of Filer against them. They might have defended, if they had thought proper, against this contract of sale on the ground that the vendor had no title in the property, and that the consideration had failed. All defences of this kind were open to them, by which they might have required Filer to make good his title to the property. The merits of the case were proper to be discussed and determined, as was intimated in *Enos vs. Tuttle*, 3 Conn. Rep., 27. But all such defences were waived by their plea, and by that they must now abide.

We have carefully examined all of the cases cited by the plaintiff in error, from which they deduce the doctrine, that the garnishee is protected upon the sole ground that he is compelled by the court to deliver the property or pay its value. But we do not so understand them. It is said by the counsel for the plaintiffs in error, that " none of the cases which hold that a garnishee, against whom there has been a recovery, shall be protected in a subsequent suit, proceed upon the notion, that the plaintiff in the second suit was a party to the former, but upon the broader ground that the payment by the garnishee was compulsory, and that the debt or property was taken from him by process of law." I do not propose to review these cases in detail, but on such review it will be found that in no case cited has it been distinctly held that a stranger to the suit has been concluded by any process to which the garnishee has been a party. On the contrary, in *Enos vs. Tuttle*, in 3 Conn., 27, it is distinctly asserted that the right of the stranger remains unaffected by the garnishee proceeding, and the merits of his claim to be tried like all other claims. In none of these cases is it intimated that the garnishee is placed in a position like that of an officer executing a writ of replevin, where he is commanded by his writ to replevy the specific property named therein. Even

in this case the protection of the officer as against a stranger, has been most seriously contested. But the garnishee can contest the title, the officer cannot; the garnishee may call in his creditor or vendor to defend, the officer cannot. It is vain to say that the real owner of property recovered in the hands of the garnishee may have his remedy over against the plaintiff, in the attachment. It is not within the power of the court thus to transfer liabilities upon, and to transpose parties to contracts, and thus impair or destroy their obligation. The attaching creditor may be, as in this case, without the jurisdiction. It would be the height of injustice to permit the garnishee to sit quietly and allow property in his hands to be taken to satisfy the debt of a stranger to his vendor, or to convert the property to his own use, and answer for its tried value, between him and the plaintiff in attachment, without giving his vendor notice of the dispute of his title, and the privilege of defending it; or to conclude him as to its value. It must be recollected that Filer was a stranger to the suit between Arkenburgh & Co., and Francis & Co., and the Adamses; that the Adamses might have required Filer to protect their title as vendees, but they did not; that they kept and used the property, accounting to the plaintiff in attachment, for the assessed value in that suit, and thus seek to be absolved from their contract of purchase with Filer. It was competent for them, as before remarked, to dispute his title by proper pleadings, but they did not. They might have discharged their duty to Filer by tendering the defence of his title to him in the garnishee suit, but they did not. We have been unable to find any authority which will excuse them from the fulfillment of their contract of purchase.

It is unnecessary to pursue this discussion further. We think the instructions of the court to the jury were correct. The garnishee, in order to protect himself, must discharge his duty. The Adamses should have given Filer notice of the

proceedings against them, and tendered him the defence, at the earliest practicable moment. So far from doing this, it does not appear that they defended at all. The same counsel who were prosecuting them as garnishees, were defending them as the vendees of Filer. But of course they could not at the same time act for the plaintiffs in the attachment and for the garnishees. The latter, so far as it appears, neither defended themselves as the representatives of Filer's interest, nor requested him to do so. It would be monstrous injustice to allow the rights of a person to be concluded in such a manner. It would have been no hardship upon the plaintiffs in error to be required to notify the defendant in error of their garnishment, and requested him to take upon himself the defence of his title. Any rule short of this would place it in the power of a fraudulent garnishee to make a record which would bar his creditor, or even a stranger, without having an opportunity to be heard.

It is claimed by the counsel for the plaintiffs in error, that Filer had notice of the garnishee proceedings, in two ways, 1. By Mr. Van Dyke requesting Mr. Solomon to join in the commission, and 2. By a notice of the same attached to the general issue originally filed in this suit. Of the former we have already spoken. Mr. Van Dyke was not in that matter the agent or attorney of the Adamses. Even if he were so, a request to join in a commission is not an offer of the defence in the suit, and if it were such, it was not seasonable.

In regard to the notice appended to the general issue, it is only necessary to remark that such notices are only held good for the particular purpose for which the statute allows them to be filed. They are not binding as admissions upon the party filing them, and can have no other effect upon the opposite party than to allow the matters of which they give notice to be given in evidence. In this case the notice would have permitted the defendants below, to have given in evi-

dence the facts therein mentioned in impeachment of Filer's title, had they not by their plea *puis darrien continuance,* waived all former pleas, and among them the general issue, and the matters set out in the notice thereto subjoined. But such a notice could extend no further. It would be notice of nothing in another suit. It is not even regarded technically as a part of the record in the same suit.

The instructions of the court as to the measure of damages were correct, viz : the amount of the notes.

On the whole case we are unable to discover any error in the proceedings in the court below, and the judgment must therefore be affirmed.

Judgment affirmed with costs.