PLUMER vs. THE WAUSAU BOOM COMPANY.

*March 15 — May 27, 1880.*

CONDEMNATION AND APPRAISAL OF REAL PROPERTY. *(1) Purchaser pendente lite, when bound. (2, 3) Waiver of objections to award. (4) Statute construed. (5) Directory statute.*

1. One who purchases real property after proceedings have been duly commenced, with notice to his vendor, for enforcing a lawful condemnation thereof by appraisement of its value, takes the property subject to any award which may thereafter be legally made in such proceedings, and is not entitled to notice of the subsequent and final proceedings.
2. The defendant company, being one of the parties who signed the stipulation on which the award was based, and visited and viewed the property with the appraisers, without then objecting to the want of notice to such purchaser, cannot now object to the award on that ground.
3. Certain names of parties claiming an interest having been signed to said stipulation "per A.," the question whether A. had authority to affix such signatures is immaterial, where the parties named took part on the same day in visiting and viewing the premises to be appraised, with the appraisers, and do not object to the award.
4. An appraisement under sec. 20, ch. 45, P. & L. Laws of 1871, is not invalid because it does not include the values of lands "adjacent to the [Wisconsin] river," owned in severalty by the parties who were joint owners of the "piers and booms" mentioned in said section; but if the

piers and booms are connected with or attached to said lands, an appraisement of the former must be construed as embracing such use of the lands.

5. The act requires the appraisers to "make duplicate certificates of such appraisements, signed by them or a majority of them, one of which shall be filed with the clerk of the circuit court of said county, and the other with the secretary of said company." *Held*, merely *directory;* and where the appraisers filed the original award, with all other papers in the proceedings, with the clerk of the circuit court, and a certified copy of it with the secretary of the company, this was a substantial compliance with the requirement.

APPEAL from the Circuit Court for *Outagamie* County. The defendant appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

For the appellant there was a brief by *Silverthorn & Hurley*, and oral argument by *Mr. Hurley:*

The award was void. 1. It should have conformed strictly to the statute under which it was made. Morse on Arb., 263; *Darling v. Darling,* 16 Wis., 644; *Steel v. Steel,* 1 Nev., 27. The statute requires notice to the parties in interest. This is jurisdictional, and cannot be waived. There was no notice whatever to Stewart, assignee of *McIndoe,* and none of the meeting of the appraisers, to any one. On this point see *Peters v. Newkirk,* 6 Cow., 103; *Lutz v. Linthicum,* 8 Pet., 178; *Jordan v. Hyatt,* 3 Barb., 634; *Rigden v. Martin,* 6 H. & J., 403; *Walker v. City Council,* 1 Bailey Eq., 443. 2. By the stipulation of the parties represented, the award was to be made by January 1, 1873. Not having been made within that time, it could not be made afterwards. Morse on Arb., 83, 84, 173, 224, 261; *Smith v. Spencer,* 1 McCord Eq. (S. C.), 92; *Hall v. Hall,* 3 Conn., 308; *White v. Puryear,* 10 Yerg., 441. 3. The award is uncertain and indefinite. It is impossible to tell therefrom what property was appraised, or what rights, interests or title appellant would acquire by payment thereof. The award is appellant's title deed, and the property and franchises for which it requires payment should be clearly defined,

so that further litigation may be avoided. *Howard v. Babcock*, 21 Ill., 265; *Schuyler v. Van Der Veer*, 2 Caines, 235; *Gratz v. Gratz*, 4 Rawle, 411; *Brown v. Hankerson*, 3 Cow., 70; *McCracken v. Clarke*, 31 Pa. St., 498; *Pettibone v. Perkins*, 6 Wis., 616; *McCord v. Sylvester*, 32 Wis., 451; *Sicard v. Peterson*, 3 S. & R., 468.  4. The matters submitted were not all determined, and the award is therefore not final.  It expressly excepts from the things adjudicated, among others, all "private interests in any land or islands." This exception includes the right of use of the river banks, one of the most important and valuable rights sought to be secured in these proceedings, and which was plainly within the terms of the submission. This exception is fatal. *Pettibone v. Perkins*, 6 Wis., 624; *Dundon v. Starin*, 19 id., 261; *Gear v. Bracken*, 1 Pin., 249; *McFarlane v. Cushman*, 19 Wis., 357; Morse on Arb., 340, 345, 384–386; *Ott v. Schroeppel*, 5 N. Y., 486; *Wright v. Wright*, 5 Cow., 197; *McNear v. Bailey*, 18 Me., 251; *Richards v. Drinker*, 1 Halst. Law, 307; *Harker v. Hough*, 2 id., 428; *Carnochan v. Christie*, 11 Wheat., 446; *Edwards v. Stevens*, 1 Allen, 315; *Varney v. Brewster*, 14 N. H., 49; *Wyman v. Hammond*, 55 Me., 534; 22 Pick., 417; 17 id., 98; Russell on Arb., 234, 253, 258; *Buntain v. Curtis*, 27 Ill., 374; 42 Me., 9; *Craig v. Wells*, 11 N. Y., 321; 3 Russ., 494; *Karthaus v. Ferrer*, 1 Pet., 222; 1 Caines, 304; 2 Cow., 638; 10 N. H., 254; 50 Me., 398; 16 Gray, 299; *Bradford v. Bryan*, Willes, 270; *Jones v. Welwood*, 71 N. Y., 211.

For the respondent there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber:*

1. The defects in the notice were not jurisdictional in the sense that they could not be waived.  And the subsequent stipulation of the parties and voluntary submission to the arbitration was a waiver. *Rothbauer v. State*, 22 Wis., 468; *Ladd v. Hildebrant*, 27 Wis., 135; *Keeler v. Keeler*, 24 id., 522; *Lowe v. Stringham*, 14 id., 222; *Swift v. Harriman*, 30

Vt., 607; *Maxfield v. Scott*, 17 id., 634; *Spaulding v. Warren*, 25 id., 316; *Hix v. Sumner*, 50 Me., 290. 2. The sale by McIndoe of his interest in the piers and booms to Stewart does not affect the validity of the award as to *Plumer*. The interests of the several owners were separate and distinct, and the award as to one may stand although it fall as to others. Morse on Arb., 31, 453, 480, 521, 577, 588; *Lamphire v. Cowan*, 39 Vt., 420; *Schuyler v. Van Der Veer*, 2 Caines, 235; *Finley v. Finley*, 11 Mo., 624; *Blanchard v. Murray*, 15 Vt., 548; *Orcutt v. Butler*, 42 Me., 83; *Butler v. Mayor*, etc., 1 Hill, 489; *Fidler v. Cooper*, 19 Wend., 289; *Cutter v. Whittemore*, 10 Mass., 442; 13 id., 244; *Keith v. Gore*, 1 J. J. Marsh., 8; *Elliot v. Davis*, 1 Bos. & P., 338; *Summerville v. Painter*, 44 Pa. St., 110; *Smith v. Virgin*, 33 Me., 148; 22 Wend., 125; *Parmelee v. Allen*, 32 Conn., 115; *Tracy v. Herrick*, 25 N. H., 401. Again, when Stewart bought of McIndoe, the proceedings were pending and undetermined, and he had knowledge of that fact. By his own acts he brought himself within the operation of the award, and is bound by it. *George v. Johnson*, 45 N. H., 456; *Humphreys v. Gardner*, 11 Johns., 61; Morse on Arb., 521. The objection that Stewart had no notice is one which affects him only, and cannot be raised by the boom company. It does not appear that he is dissatisfied with the award, or that he has not in fact ratified it. 3. It is claimed that the award is uncertain, and that it does not include all the property mentioned in the charter. Every reasonable presumption should be made to uphold rather than defeat the award. *Slocum v. Damon*, 1 Pin., 520; *Merritt v. Merritt*, 15 Ill., 565; *Kendrick v. Tarbell*, 26 Vt., 416; Morse on Arb., 446-7. Certainty to a common intent is all that is required, and technical precision is unnecessary. Morse on Arb., 408; Russell on Arb., 275; *Purdy v. Delavan*, 1 Caines, 304; *Butler v. Mayor*, 1 Hill, 489; *Akely v. Akely*, 16 Vt., 450; *Perkins v. Giles*, 53 Barb., 342, 349; *Jackson v. Ambler*, 14 Johns., 96; *Henrickson v.*

*Reinback*, 33 Ill., 299. As the award refers to the order, stipulation and charter, if by reference to these external sources of information 'it is capable of being reduced to certainty, it is good. *Bancroft v. Grover*, 23 Wis., 463; *Pick v. Rubicon Hyd. Co.*, 27 id., 433; *Butler v. Mayor*, 1 Hill, 489; *Cargey v. Hitcheson*, 5 Dowl.·& Ry., 433; 33 Ill., 299; *Prettyman v. Walston*, 34 id., 175; *Bird v. Bird*, 40 Me., 398; *Harmon v. James*, 15 Miss. (11 S. & M.), 111; *Pipkin v. Allen*, 29 Mo., 229; *Jackson v. De Lancy*, 11 Johns., 365; Morse on Arb., 438; 56 Ill., 439. From these sources it clearly appears that the property to be appraised, and which was actually included in the award, was that which was jointly owned by the three men, Clark, McIndoe and *Plumer*. This included the system of piers and booms, and nothing else. These men, and they alone, were made parties to the proceedings. The company had not, and never have, appropriated any private lands on the river shore or the islands, and none were intended to be included in the appraisement, either by the original order or the stipulation of the parties. As a matter of course, whatever rights or easements these original owners had acquired in the bed or banks of the river as *appurtenant* simply to the working of the system of booms, would pass without specific mention. Neither were they excluded, or intended to be, by the exception in the award of "private interests in any lands or islands."

The following opinion was filed March 30, 1880:

ORTON, J. Walter D. McIndoe, *Bradbury G. Plumer* and John C. Clark were the joint owners of certain booms and piers in the Wisconsin river, near the city of Wausau, in the following proportions, viz.: McIndoe owned three-ninths, *Plumer* four-ninths, and Clark two-ninths. Desiring to operate their works to better advantage, and with enlarged powers, they procured the passage of chapter 45 of the Private and Local Laws of 1871, incorporating the company, of which

they were to be the principal stockholders.    Section 20 of said chapter empowered the corporation to take possession of said booms and piers, "and any lands adjacent to said river," provided the company should pay to such owners of the booms and piers, and in such proportion, and to the owners of such land, reasonable compensation therefor, when the amount should be ascertained as provided in section 21.    This last section provides for the appointment of appraisers to value said property, by the judge of the circuit court of Marathon county, upon the application of the company or any of the parties interested.    Upon the application of *B. G. Plumer*, the respondent, and upon proper notice, the Hon. George W. Cate, judge of said court, on the 18th day of September, 1871, appointed Joseph Desert, Benjamin Single and William P. Kelley such appraisers.

On the 22d day of August, 1872, McIndoe died, and the Hons. G. L. Park and James O. Raymond were appointed his executors; but before he died (and at what exact time is not stated in the record), he sold his interest in the booms and piers to one Alexander Stewart.    It is admitted in the brief of the appellant's counsel, that at the time the notice was given and the order made for the appointment of the appraisers, "McIndoe was alive, owned and was in possession of the property."    After considerable delay in making the appraisement, and on the 30th day of December, 1872, a written stipulation was made and signed by the president and secretary of the company, by Park and Raymond, the executors of McIndoe, deceased, and by John C. Clark and the respondent, *Plumer*, which authorized and directed said appraisers to proceed and "appraise the property and award the damages," "on this 30th day of December, 1872, without further or other notice," and which waived "all notice, technicalities and informalities."    On the same day the appraisers took and subscribed the proper oath to "faithfully and impartially make the appraisement;" and on the first day of January, 1873, by

a stipulation signed by the president and secretary of the company, by Park and Raymond per one Walter Alexander, and by Clark and *Plumer*, a basis was agreed upon, upon which the appraisers were directed to appraise the property; and on the same day, Clark, as president of the company and for himself, Raymond, one of the executors of McIndoe, and the respondent, *Plumer*, together with the appraisers, "visited and viewed the piers and booms to be appraised."

On the 11th day of January, 1873, the appraisers made their award in writing, by which they awarded to the estate of McIndoe $9,210.96 6-9, to *Bradbury G. Plumer* $12,281.28 8-9, to John C. Clark $6,140.64 4-9, as their just proportion of damages by reason of the taking of said property by the company. The appraisers filed with the clerk of said court the original appraisement or award, and delivered a copy thereof to the secretary of the company. The respondent, *Plumer*, demanded of the company the payment of his portion of the award, and offered to convey to the company his interest in the property upon receipt of the money, and the company refused. The respondent then commenced this suit upon the award, for his part of the damages, and recovered judgment therefor.

On this appeal the only question is of the validity of the award. On this main question it is objected, *first*, that Stewart, the purchaser of the interest of McIndoe in the property, had no notice of the proceedings subsequently had, and did not sign any of the stipulations waiving such notice, and is not therefore bound by the award; and, if he is not bound, that the award is void.

Stewart bought an interest in the property *pending* the proceedings to condemn the property and assess the damages, and he took such interest *cum onere* and subject to any award which might legally be made. The appointment of appraisers, with proper notice to all parties then interested, was the commencement of proceedings *quasi* judicial, and in analogy to

other judicial proceedings, in which notice to the parties then interested in the property is jurisdictional, and when such notice is given, the subsequent and final proceedings, without further notice to any intervening purchaser, will bind, not only the parties notified, but their *privies* also, who purchase an interest in the property *pendente lite. Adams et al. v. Filer*, 7 Wis., 306; *Whitney et al. v. Brunette*, 15 Wis., 61. When jurisdiction has once attached by notice to the proper parties at the time, a failure to give notice of subsequent proceedings will not invalidate them. Mills on Em. Dom., § 95.

It may also be said, in answer to this objection, that the company waived all possible objection on the ground that the proper parties did not visit and view the property with the appraisers, and did not sign the stipulations which resulted in the appraisement at the time when it was made. The company are presumed to have known who the proper parties were with which to act in the matter, and in acting with those who signed with the company the stipulations and waivers, without objection, it is now too late to make such objection to defeat the award which their own conduct contributed so materially to produce. Generally, no one can take advantage of the want of notice of any proceeding except the party himself. Here the company does not complain that it had not sufficient notice, and joined in a stipulation to waive "other and further notice" to anybody.

It is an important question, but one which we do not decide in this case, whether Stewart, who purchased an interest in the property pending these proceedings to condemn it and assess the damages, is entitled, by virtue of a conveyance of the property, to the damages assessed, and whether such damages would not belong to the estate of McIndoe as personal property.

*Second.* It is objected that Park and Raymond did not sign one of the stipulations as executors or otherwise, but their names appear to have been signed by one Walter Alexander. This stipulation was signed on the same day, and

soon after Raymond, as one of the executors of McIndoe, together with the appraisers and the other parties interested, "visited and viewed the piers and booms to be appraised," and by this act alone waived all objections to the manner or time of the appraisement; and it becomes quite immaterial whether Alexander had authority to sign these names or not.

*Third.* It is objected that the award does not embrace the value of lands belonging to the former owners of the piers and booms which were "adjacent to said river." It seems that the three owners of the piers and booms each separately owned an island in the river near the works, and that the piers and booms may to some extent have been connected with or attached to the shore lines of these islands. If so, then the appraisement would embrace such a use of the islands in connection with the piers and booms. But it cannot, certainly, be contended that the whole of this separate property of the owners and the piers and booms could be placed and appraised together as both joint and separate property. We think this objection arises from a wrong construction of the language of the charter. Section 20 provides for the taking of an appraisement of two classes of property. One class consists of the rights and joint interests of the former owners of the piers and booms in those improvements, just as they are. The other class embraces "any lands adjacent to the river," by whomsoever owned, and found necessary for the use of the improvement, and this class would include these lands owned separately by the parties.

*Fourth.* It is objected that the charter requires that "duplicate certificates of such appraisement, signed by them," shall be made, "one filed with the clerk and the other with the secretary of the company," and this was not done. This requirement is merely directory, and if not strictly followed certainly would not affect the validity of the award. Just what the language of the charter means in this respect is not readily seen. A certificate of the appraisement would not

strictly be a certified copy of the appraisement, and a " dupli-
cate certificate " would not be strictly a duplicate of the
award. The appraisers filed their original award, with all
other papers in the proceedings, with the clerk of the court,
and filed a certified copy of it with the secretary of the com-
pany. This was certainly a substantial compliance with the
requirement, and, if anything, an improvement, so far as the
authentication of the award is concerned.

We are unable to find any valid objections to the award.
All the parties interested appear to have joined together to
expedite and consummate the appraisement, upon the proper
basis and at the proper time, and none of the parties or privies
appeared to make any objection to it at the time, or to the
manner in which it had been filed. But when demand is
made upon the company, they, for the first time, object to
its validity, not because the company had not ample notice,
and had not waived all " technicalities and formalities," but be-
cause some other party had not such notice, when such party
makes no objection to the award on that ground.

The company has long been in the undisputed use of the
property, and there is no good reason shown in this case why
it should not pay this award of damages to the former owners
of it.

*By the Court.*— The judgment of the circuit court is
affirmed, with costs.

A motion for a rehearing was denied on the 27th day of
May, 1880.