Du Pont vs. Davis.

## Du Pont vs. Davis.

<(1) Res Adjudicata. (2–5) Ejectment: Equitable Defense: Pleading and Practice. (2) *Equitable defense in ejectment should be pleaded as counterclaim.* (3–5) *Order of trials of legal and equitable issues.* (6) *Parties defendant.* (7) *Reversal of judgment.* (8) Adverse Possession: *Statute construed.*

.1. A judgment of nonsuit in this cause having been reversed (30 Wis., 170), and the cause remanded for trial, and the present appeal being from a judgment after trial: *Held,* that the point decided on the former appeal is *res adjudicata* in *this action;* and the decision, even if erroneous, is binding upon the parties and the court herein. The court, however, regard the former decision as correct.

·2. Equitable defenses may be set up in actions of ejectment; but they should be pleaded by way of *counterclaim,* and not merely by way of defense. *Lombard v. Cowham,* 34 Wis., 486.

-3. In ejectment; where defendant alleges a mistake in a deed relied upon by plaintiff, and demands a reformation thereof, by way of counterclaim, the question of such mistake does not arise upon the trial of the issue at law, but only upon the trial of the equitable issue.

-4. In such a case the more correct practice is, to try first the equitable issue, before the court, and afterwards to try the legal issue.

5. But the reverse order of trial in such a case, where it works no preju-
dice, is not error.

6. Whether the defenses in ejectment be legal or equitable, the persons
whose interests are only *collaterally* affected by the judgment need
not be made parties. The parties, if they choose, can put the respon-
sibility of the litigation upon those under whom they claim, and so
conclude them by the judgment. *McConihe v. Hollister*, 19 Wis., 269,
distinguished and explained.

7. Where, in ejectment, defendant set up certain facts as an equitable de-
fense, but was not permitted to plead them by way of *counterclaim*,
and the court, on the trial of such equitable defense, found the facts
adversely to the defendant; *Held*,

(1.) That if this court were satisfied that the facts were correctly
found, it might hold that defendant was not injured by the denial of
a separate trial of the counterclaim, and refuse to reverse the judg-
ment for such error.

(2.) But the proofs in this case not being entirely satisfactory, and
there being reason to believe that a new trial may bring out the truth
more clearly, the judgment is reversed, and also the finding of the
court below upon the *mistrial* of the equitable issue, the verdict be-
ing left undisturbed, and the cause is remanded for a trial of the
counterclaim. *Humphrey v. Sears*, 2 Wis., 201; Laws of 1860, ch. 264,
sec. 7.

8. In subd. 3, sec. 7, ch. 138, R. S. (which defines " adverse possession " of
land in certain cases), the words "for the purpose of husbandry, or
[for] the ordinary use of the occupant" are to be construed as relat-
ing back to, and limiting, the words "the supply of fuel or of fencing
timber."

APPEAL from the County Court of *Milwaukee* County.

Ejectment. A former decision of this court in the same
cause, on appeal from a judgment of nonsuit, is reported in 30
Wis., 170, 178. The original answer contained: 1. A general
denial. 2. An allegation that defendant claimed title to the
premises under one Clark, who entered into possession March
13, 1850, under claim of title exclusive of any other right,
founding his claim upon a conveyance from one Sylvester Pet-
tibone, dated on the day last named, and recorded two days
thereafter, as being a conveyance of said premises, and that
there had ever since been a continued occupation and posses-
sion under such claim. After the cause was remanded for

trial, defendant was denied leave to amend her answer by eliminating from the second defense her admission of title in Pettibone. She also asked leave to amend by adding a third defense by way of counterclaim. This averred mistake in the deed from Pettibone to Alfred Du Pont, under which plaintiff claims (and which is mentioned in the former report), whereby such deed was erroneously made to include the land in controversy; and it asked for a reformation of the deed. The court permitted the averments, so proposed, to be added to the answer .as a defense merely, but not as a ground of counterclaim. When the cause was called for trial, defendant moved successively that the equitable issue therein be first tried by the court, and that all the facts in the case should be presented to the jury, and all the issues tried at the same time; but both motions were denied.

A jury was then impaneled for the trial of the legal issues. Plaintiff introduced in evidence the following deeds, against objection: 1. A deed dated April 28th, 1848, and recorded June 30, 1848, executed by Sylvester Pettibone and wife to Alfred Du Pont, described in the former report of this case (30 Wis., 171.) 2. A deed of the same land, dated October 15, 1855, executed by Alfred Du Pont and wife to *Henry Du Pont,* the plaintiff, and Alexis J. Du Pont, " and the survivor of them." He also introduced some testimony to show the death of Alexis J. Du Pont, and occupation under the deed.

Plaintiff having rested, the defendant moved for a nonsuit upon the same grounds on which the nonsuit before appealed from was granted, and also for the further reason that the proofs were insufficient. Motion denied.

The defendant then introduced in evidence a deed dated March 13, 1850, and duly recorded March 15, 1850, executed by Sylvester Pettibone to Elisha B. Clark, conveying premises described therein as " part of the east half of the S. W. quarter of sec. 30, township 7, range 22 east, " in the county of Milwaukee, " commencing at a point on the N. E. corner of said

east half of said qr. sec., running thence S. 14 chains and 25 links; thence W. 3 chs., 50 links, thence N. 14 chs., 25 links, thence east 3 chs. and 50 links, to the place of beginning, containing five acres." To establish an adverse possession under this deed, the defendant showed that soon after the sale to him, Clark, whose heir defendant was, in company with Pettibone and others, went upon the land and measured and staked off the boundary lines and corners of the purchase as then mutually agreed upon, which lines included the lands in dispute; that he at the same time staked out a building site upon the land within or near the disputed tract, and soon afterward drew there some lumber and timbers for building purposes, which were subsequently hauled away without being used; that at the time of the purchase in 1850, the whole tract was inclosed by a fence, most of which remained there until about the year 1856, when, by reason of depredations, as it would appear, it wholly disappeared from the north and south ends, the land from that time up to 1861 remaining open, and being used as a common passage way by the public and adjoining owners; that in the latter year, defendant built new fences upon the north and south ends (the east fence being removed at about the same time), cultivated a large share of the land during that and the following years, and set out upon it a quantity of fruit trees and shrubbery; that the south fence again disappeared in 1862 or 1863, the land then remaining open and unoccupied up to the year 1869 (about three years prior to the the trial of the action), when new fences were again erected by the defendant. No other acts of ownership were shown on the part of the defendant or her grantors, except payment of taxes; nor did it appear that anybody else had exercised acts of ownership upon the land since its sale to Clark.

For the purpose of showing title out of Pettibone, the defendant further offered in evidence several tax deeds to third parties; also a record of bankruptcy proceedings in 1842, against said Pettibone; but these were ruled out.

The court refused to submit the question of adverse possession to the jury, upon the evidence, but directed them to find for the plaintiff, which they did.

Afterward, the issues arising upon the third or equitable defense coming on to be tried before the court, the defendant, for the purpose of showing the mistake in the Du Pont deed, offered and read in evidence the following deeds and writings: 1. A deed from Sylvester Pettibone and wife to Cyrus D. Davis, dated May 26, 1855, conveying all of the east 35 acres of land in the southwest quarter of section 30, town 7 north, of range 22 east, "excepting and reserving 9½ acres heretofore sold in the northeast corner of said section running back to the Menomonee River." 2. A deed from Cyrus D. Davis and wife to James Cochrane, dated June 21, 1855, of a part of said east 35 acres, described by bounds, excepting "four and forty one-hundredths acres heretofore deeded to Du Pont," and other reservations. 3. A deed from Sylvester Pettibone to Alfred Du Pont, dated April 28, 1848, granting to the latter a right of way over the lands of the former, from Spring Street upon the north to lands that day conveyed to the latter, in the rear; which right of way, plaintiff then and there admitted, did not cover any of the five acre tract deeded to Clark, but was wholly upon the lands of Pettibone to the lands of Du Pont in the rear of said tract. 4. A mortgage given by S. Pettibone to Elisha B. Clark, dated March 13, 1850, conveying the east 35 acres of the southwest quarter of section 30 before mentioned, "except 4 41-100 acres thereof heretofore conveyed to Alfred Du Pont, by deed," etc., and also "except five acres this day conveyed to said party of the second part." 5. A bond secured by said mortgage, given to secure Clark against the lien of certain judgments against Pettibone, in which the land deeded to the former was described as "five acres," bounded as in the deed heretofore mentioned.

The plaintiff then admitted that the tract of land covered by the deed to Clark, as described by the metes and bounds given

therein, contained 5 4–1000 acres; and that the tract of land covered by the deed to Alfred Du Pont, and lying south of the piece of land described in the Clark deed, contained 4 306–1000 acres. The court found as a fact, that there was no mistake in the Du Pont deed; and held that the plaintiff was entitled to judgment upon the verdict. Judgment accordingly; from which the defendant appealed.

*Cottrill & Cary*, for appellant, argued, 1. That, admitting as true the facts set out in the second amendment to defendant's answer, she was clearly entitled to the affirmative relief demanded, and the defense should have been permitted to stand as a counterclaim. 2. The deed from Pettibone to Du Pont does not cover the land in controversy. To give it that effect, the distances of the side courses must be entirely disregarded, and the lines held to run a much longer distance, and to inclose a much larger tract of land, than those mentioned in the deed itself. Such a construction should be adopted as will make the whole description operative, if possible; and this may be accomplished by commencing at one of the other corners in the Menomonee River, which is a fixed monument, and reversing the courses. *Gove v. White*, 20 Wis., 425; *Pearson v. Baker*, 4 Dana, 321; *Herrick v. Sixby*, 1 Privy Coun. App. Cases, 436; *French v. Pearce*, 8 Conn., 439; Tyler's Law of Bound., 119, 121–4, 129, 131, 177. 3. The court erred in taking from the jury the question of adverse possession. *Lawrence University v. Smith*, 32 Wis., 587; *Cotton v. Hurlbut*, 29 id., 152. 4. The tax deeds should have been admitted in evidence. The defendant having, according to the ruling of the court, shown no title in herself, was entitled, by any competent evidence, to show that the plaintiff had none. 5. The equitable defense set up in defendant's amended answer was fully proved.

*Mariner, Smith & Ordway*, for respondent, as to the question of adverse possession, cited R. S., ch. 138, sec. 6, and argued that there must be an entry and holding in good faith (*Whitney v. Powell*, 1 Chand., 57; *Woodard v. McReynolds*, id.,

244); that plaintiff, having the prior legal title and having shown an actual occupancy of a part of the land embraced in his deed, would be considered in possession of the whole, and the defendant, relying upon an adverse possession, must show an actual occupation (*White v. Burnley*, 20 How., U. S., 235; Angell on Lim., 400; *Schultz v. Lindell*, 30 Mo., 310); that such occupation must be notorious (*Denham v. Holman*, 26 Ga., 182; Angell on Lim., § 392), and in cases like that at bar the claim should be *pedis possessio* (*Haye v. Lawn*, 5 Md., 237; *Doolittle v. Tice*, 41 Barb., 181); that the possession must be marked by definite boundaries, and must be continuous (Angell on Lim., § 396, p. 418, and note; *Doe v. Campbell*, 10 Johns., 176; *Brandt v. Ogden*, 1 id., 156; *Jackson v. Wheat*, 18 id., 44; *Ward v. Bartholomew*, 6 Pick., 415; *Allen v. Holton*, 20 id., 465; *Pederick v. Searle*, 5 S. & R., 240; *Ewing v. Alcorn*, 40 Pa. St., 492; *Groft v. Weakland*, 34 id., 304; *Sydnor v. Palmer*, 29 Wis., 228; *Haag v. Delorme*, 30 id., 591; *Stevens v. Leach*, 19 Pa. St., 262); that the burden of proof was on the defendant to show adverse possession, and the evidence must be clear and positive (*Lawrence v. Kearney*, 32 Wis., 281; *Sydnor v Palmer, supra*); and that the defendant had failed to prove such a possession as the law required. As to the question of mistake, counsel argued that, in order to entitle the defendant to relief on that ground, the mistake must be shown to have been *mutual*, and must be established beyond reasonable doubt (*Wood v. Hubbell*, 5 Barb., 602; *Pennell v. Wilson*, 2 Abb., N. S., 469; *Townshend v. Stangroom*, 6 Ves. jr., 328; *Shelburn v. Inchiquin*, 1 Bro. C. C., 338; *McClellan v. Sanford*, 26 Wis., 600; *Harter v. Christoph*, 32 id., 245); and that a mere error of judgment as to the amount of land conveyed would be no ground for equitable relief. *Kent v. Lesley*, 24 Wis., 654; Willard's Eq., 212; *Williams v. Calverley*, 1 Ves. jr., 211; *Powell v. Clark*, 5 Mass., 356; *Wells v. Ogden*, 30 Wis., 637.

3. As to defendant's exceptions to the exclusion of certain tax deeds and court records offered in evidence, they argued, first,

the invalidity of most of the tax deeds, citing numerous author-
ities ; and secondly, that as defendant claimed title through
Pettibone, she could not be permitted to show the title out of
him.   4. The third defense could not avail defendant as a
counterclaim, neither of the parties to the deed being before
the court ; and the refusal to allow it as such was not error.
*McConihe v. Hollister*, 19 Wis., 269 ; *Hicks v. Sheppard*, 4 Lans.,
335 ; *Farmers' Bank v. City of Detroit*, 12 Mich., 445 ; *Bentley v.
Smith*, 2 Keyes, 342.   Even if this ruling was erroneous, the
defendant has sustained no injury thereby, as the facts of the
equitable defense were found against her.   5. There was no
error either in the trial separately of the legal and equitable
issues of the case, or in the trial of the legal issue first.   *Gunn
v. Madigan*, 28 Wis., 158 ; *Harrison v. Juneau Bank*, 17 id., 340 ;
*Pitcher v. Hennessey*, 48 N. Y., 422.

RYAN, C. J.   This cause was before the court upon a non-
suit of the plaintiff, reversed and remanded for trial, in 30 Wis.,
170.   It comes here now on judgment after trial.   And we
are now urged for the appellant to review the decision of the
court on the nonsuit.   If the doctrine of that decision were
wrong, we could reconsider it in another cause, but we cannot
in this cause.   In this case it is *res adjudicata*, binding the par-
ties and the court.   This is the settled law of this court. *Par-
ker v. Pomeroy*, 2 Wis., 112 ; *Downer v. Cross*, id., 371 ;
*Cole v. Clark*, 3 id., 323 ; *Wright v. Sperry*, 25 id., 617 ;
*Noonan v. Orton*, 27 id., 300.

We think it proper, however, to say that we approve the
ruling in the former appeal.   The learned counsel who argued
against it, did not appear sufficiently to appreciate the status
of the case, on the nonsuit.   The deed of Pettibone to Alfred
Du Pont, disclosing all that he claims it did disclose, was a
valid deed upon its face, carrying the legal estate.   His own
counterclaim rests on that effect of the deed.   The question of
mistake in the deed, in his own view, could not arise on the

plaintiff's legal case. It could come up only on his own equitable defense.

It would have been more correct practice to have first tried the equitable issue on the defendant's counterclaim, before the court; and after, the legal issue by a jury. But this rests somewhat in the discretion of the court. And the reverse order of trial, in cases like the present, where it works no prejudice, cannot be regarded as error. Far less can the separation of the two trials, which should be distinct. *Harrison v. Bank*, 17 Wis.. 340; *Hegar v. Railway Co.*, 26 id., 624; *Gunn v. Madigan*, 28 id., 158.

The defendant was entitled to a trial of her equitable case, not as a defense merely, but as a counterclaim. This court has repeatedly held that such equitable defenses may be made in actions of ejectment: and the decisions only follow the plain and positive provisions of the statute. *Fisher v. Moolick*, 13 Wis., 321; *Prentiss v. Brewer*, 17 id., 635; *Hegar v. Railway Co.*, 26 id., 624; *Quinn v. Quinn*, 27 id., 168. Several of these cases were upon counterclaims open to the same objection made in this case. And in a decision lately made in *Lombard v. Cowham*, 34 Wis., 486, the court held that an equitable defense in ejectment can be made by counterclaim only, and not by mere answer; approving a similar ruling in *Dewey v. Hoag*, 15 Barb., 365, upon the ground that otherwise the legal title and the possession, in such cases, might never meet.

It is very certain that we can do no such violence to the statute as to exclude equitable defenses of this character. They must be admitted either by way of answer or by way of counterclaim. And the question which now meets us is, which is the better way, to give full effect to the policy of the statute, to quiet titles, and to bring together the legal and equitable estates and the possession? After mature consideration, we think by way of counterclaim, and we adhere to the ruling in *Lombard v. Cowham*.

The objection raised to the counterclaim is, that there is a

necessary party to a proceeding to declare a mistake in the conveyance and to reform it, who is not a party to the ejectment. Why this objection, if good against an equitable counterclaim, is not good against a defense resting on the same equity, is not made to appear. If the rights of the grantor of both parties would be affected by a judgment according to the prayer of the counterclaim, would they not also be affected by a judgment for the defendant on the equitable answer? Would not his conveyance to Alfred Du Pont equally fail the grantees of the latter in both cases, and equally tend to his liability over?

We have the same difficulty in appreciating the distinction, in the effect upon the grantor of the parties, between judgment for the defendant on a legal defense, and judgment for the defendant on an equitable defense. Had the respondent here been in possession, and the parties to this action reversed, the judgment of the county court would have been for him on his legal title. Would not that judgment have subjected Pettibone to similar liability over to the appellant, as judgment here for the appellant on her counterclaim will to the respondent? Whichever way that action or this, between his grantees, might result, whether upon the legal estate or upon the equity, it seems to us that his rights would be similarly affected.

In such cases in ejectment, and they are not unfrequent, judgment on an issue of law, under the old or the new pracitce, would affect the rights of third parties, as well as judgment on an equitable issue, under the new practice. It was always so, and often occurred. Yet the courts never hesitated to give judgment between the parties to ejectment, because the rights of others on their grants or covenants might be collaterally passed upon. And we see no good reason why we should hesitate now, merely because we are adjudicating an equitable instead of legal right.

In all such cases, whether arising on legal or equitable defenses, we hold that it is unnecessary that persons whose rights

are collaterally affected by judgment in ejectment should be parties or bound by the judgment. The parties can, if they choose, put the responsibility of the litigation on those under whom they claim, and so conclude them by the judgment. *Adams v. Filer*, 7 Wis., 306.

There remains indeed in our way the technical distinction that, on an equitable defense, the court acts negatively only in refusing to enforce the legal against the equitable right; whereas, on a counterclaim, it acts positively in granting affirmative, equitable relief, collaterally affecting one not a party. But the effect is the same; the distinction is purely technical, and must yield to an effective construction of the statute.

We do not think that we are precluded from the rule given, by the decision of this court in *McConihe v. Hollister*, 19 Wis., 269. The true point of that decision, not perhaps very clearly stated, is, that the defendant, in his answer, averred that the note and mortgage in suit had not been assigned to the plaintiff, and were the property of the original payee and mortgagee, who was not a party; and, for fraud alleged against the payee and mortgagee, prayed that the note and mortgage be delivered up and cancelled. That was virtually a prayer against one not a party, not against the party, and which the defendant's own case showed that he had no right to make against the party. Therefore the defendant's pleading was held to be an answer, and not a counterclaim.

The only case cited to us which we find to be in conflict with the views here expressed, is *Hicks v. Sheppard*, 4 Lansing, 335. We do not find that the case has been before the court of appeals, and there is no authority cited for it at the bar or by the court. It rests on the reasoning of the court which decided it, which does not satisfy us, for reasons already given; and, although entitled to consideration, is in no sense binding on this court. We therefore feel free to establish a rule for ourselves, as we have already stated it; which only goes to

reconcile the uniform decisions of this court hitherto with *Lombard v. Cowham.*

But it is said that, as the court below found the facts of the equitable defense against the appellant, it was immaterial there that it was treated as an answer only; and that here the judgment should not be reversed, unless we should come to a different conclusion on the facts. Though the court below erred in refusing the appellant a trial of her counterclaim, and she is therefore *stricti juris* still entitled to a trial of it, and therefore entitled to a reversal of the judgment, we might yet yield to such reasoning in a different case.

But in this case we shall reverse the judgment, and direct a trial of the issue on the counterclaim. This has been done in such a case before, where there was no error on the trial. *Humphrey v. Sears*, 2 Wis., 201. And though it has been denied in subsequent cases (*Miner v. Medberry*, 7 Wis., 100; *Carney v. Emmons*, 9 id., 114), any doubt of the power or propriety of making this disposition of cases calling for it has been removed by sec. 7, ch. 264, Laws of 1860.

In the one before us, we do not say whether or not the appellant has made out such a case of mistake, by such kind and certainty of proof as is necessary, to justify a judgment in her favor on her counterclaim. She has certainly given some proof to raise some presumption of the mistake which she alleges. But we are not all prepared to say that it is satisfactory to us of a mutual mistake of Pettibone and Alfred Du Pont. And we all think that a new trial may well bring forth some additional light on the subject. For example: it was suggested on the argument that Sylvester Pettibone was too infirm and forgetful to recall the transaction with Alfred Du Pont and testify to it. This does not appear in the case, and would tend to remove a difficulty in accepting the kind of proof relied on. Again, it was intimated that Alfred Du Pont bought so much land at so much an acre, corresponding with

the consideration stated in Pettibone's deed to him. That would tend to bring the mistake, if mistake there were, home to him, and make it mutual. And the reverse of fact would have reverse tendency of effect. It does not appear either way in the evidence. In general, we hope that a full trial of the equitable issue would tend to bring out the full truth of the matter. At all events, there is doubt enough in the court to make us unwilling to give final judgment now, either way, on proofs not wholly satisfactory, and which seem likely to be made more decisive, one way or the other, by another trial. We shall therefore follow *Humphrey v. Sears.*

It is necessary to say that we have concluded not to disturb the verdict on the legal issue. The only question material to the case, for the jury, was adverse possession. And we are not able to say that the appellant gave sufficient evidence to go to the jury, of such " a definite, positive and notorious possession," as is required under the statute. The possession proved was, at best, intermittent throughout, and at times doubtful. We think that the court below was right in refusing to submit the question to the jury.

Some stress was laid on the final words of the third subdivision of facts constituting adverse possession, in sec. 7 of the statute, R. S., ch. 138. It seemed to be taken for granted that those words meant, when the land was occupied for the ordinary use of the occupant; and that the fragmentary possession of the appellant and her ancestor might be consolidated under that phrase. But we are satisfied, on examination of the section, that the words relate to fuel or fencing timber for the ordinary use of the occupant. We took the section from New York, and this seems to be their construction of it. *Munro v. Merchant,* 26 Barb., 383. *Vide,* to the same effect, 29 Wis., 253. A different construction would not vary our conclusion on the facts.

In this view, we shall let the verdict stand; but reverse the findings of the court below on the equitable issue mistried be-

fore it, and the judgment, and direct a trial of the issue on the appellant's counterclaim.

Under the circumstances, we wish we could do this without costs; but the decisions of the court leave us no discretion. *Bank v. Prescott*, 27 Wis., 616; *Noonan v. Orton*, 31 id., 265.

*By the Court.* — Judgment reversed, with costs, and cause remanded with the directions above stated.