Argued October 19;  decided November 9, 1896.

## BRIDAL VEIL LUMBERING CO. v. JOHNSON.
(46 Pac. 790; 34 L. R. A. 368.)

1. Right of Eminent Domain.—The right of eminent domain is one that can be exercised only by legislative authority, and for a use beneficial to the public, and whether a proposed use is a public one is for the courts to determine as a question of fact.

2. Eminent Domain—Public Use.—A railroad chartered to extend from a certain town past a saw mill, through rough, mountainous, timbered, and sparsely settled country, to the middle of a certain section on lands of the United States, without going near any other town, city, or settlement, or other railroad, and which has been built only a very few miles from the town into the timbered region, and has no freight or passenger depots, passenger coaches, or freight cars, except logging trucks, and has never charged passengers any fare—is a railroad for which eminent domain may be exercised, where it is not shown that it was intended simply as a logging road, and everyone having occasion to use it as a passen-

ger or for the transportation of freight has a right to require the service.*

From Multnomah:  HARTWELL HURLEY, Judge.

This is an action by the Bridal Veil Lumbering Co. against D. S. Johnson, to condemn a right of way for a railroad. The defense is that plaintiff was organized for the operation of a saw mill for the manufacture of lumber, and the proposed railroad is intended for its own private use and benefit in connection therewith, and not for the ordinary purposes of a railroad for the transportation of freight and passengers, and that therefore the use for which the land is required by the plaintiff corporation is not public, so as to justify the exercise in its behalf of the power of eminent domain. The cause was tried without the intervention of a jury, and on July 31, 1892, the court filed its findings of fact and conclusions of law, from which it appears that plaintiff was incorporated in 1889; that by its original and supplementary articles of incorporation one of its purposes is that of constructing and operating a railroad for the transportation of freight and passengers from Bridal Veil, Oregon, by way of the mill of the Bridal Veil Falls Lumbering Company, to the center of section 1, Tp. 2 S., of R. 7 E. of the Willamette meridian, near the base of Mount Hood, in the State of Oregon, both its terminal points being in Multnomah county; that it was not organized for the sole purpose of operating a saw mill, or for supplying the mill with saw logs, or for constructing and maintaining a logging road

*NOTE.—With the case of *Pittsburg Railroad Co.* v. *Benwood Iron Works* (W. Va.), 2 L. R. A. 680, is a note discussing several branches of the question of eminent domain, and particularly the character of the use for which the property is demanded. The matter is discussed in *Wisconsin Water Company* v. *Winans* (Wis,), 39 Am. St. Rep. 813, and other cases are cited in the note thereto, and the question is considered at length in *Butte Ry. Co.* v. *Montana Union Ry. Co.* (Mont.), 50 Am. St. Rep. 508, with note.—REPORTER.

thereto; that a portion of the railroad has already been constructed, and so operated and maintained that "the general public have had the use and benefit thereof for the transportation of freight and passengers whenever freight was offered or passengers desired to ride"; and that, "so far as completed, it provides means of transportation useful and beneficial to the people living in the section of country in which it is built," and "gives to them and persons having business in that vicinity improved facilities for the transportation of freight not possessed before." From these findings the court concluded, as a matter of law, that the plaintiff was entitled to exercise the power of eminent domain. A short time after they were filed, the defendant moved for additional findings of fact, and presented a series of proposed findings, some of which the court adopted. From these it appears that the northern terminus of that portion of plaintiff's road as located and constructed is at the saw mill referred to, about two miles from and at an elevation of 1,300 feet above the town of Bridal Veil; that no line or route of the proposed road has ever been surveyed, located or constructed from Bridal Veil to the saw mill; that, as surveyed and constructed, it extends a distance of five and a half miles to lands owned by plaintiff; that the southeastern terminus of the route, as described in the articles of incorporation, is near the base of Mount Hood, upon land owned by the government of the United States, and that there is not at or near thereto any town, city, or settlement, or other railroad; that the country along such route is rough, mountainous, covered with timber, and sparsely settled, and, except the town of Bridal Veil, there is at no place on the line or in its vicinity any town, city, or thickly settled neighborhood; that the plaintiff has connected with its railroad no freight or passenger depots, no passenger coaches, and no freight cars, except

that it has a number of trucks, on one of which there is
a platform, covered in time of rain, and that plaintiff has
never carried over its road any passengers for hire, but
has always permitted any person who wished to ride on
its trucks to do so without charge. Among the findings
proposed by the defendant, but rejected by the court, is
one to the effect that the principal purpose for which
that portion of the road already constructed was built,
and for which it is and has been used, is that of transport-
ing saw logs from the lands of plaintiff to its mill. A
judgment having been entered upon the findings in favor
of plaintiff, the defendant appeals.

                                        Affirmed.

For appellant there was a brief over the name of
*Watson, Beekman & Watson*, with an oral argument by
*Mr. Edward B. Watson*.

For respondent there was a brief over the name of
*Bronaugh, McArthur, Fenton & Bronaugh*, with an oral
argument by *Mr. Lewis L. McArthur*.

Mr. Justice Bean, after stating the case in the fore-
going language, delivered the following opinion of the
court:

1. There being no bill of exceptions in the record,
the only question for our determination is whether the
findings of fact support the judgment. The right of
eminent domain is a right of sovereignty, and can be
exercised only by legislative authority, and for a public
use or benefit. When, therefore, a particular corporation
claims the right to take private property without the con-
sent of the owner, it must show not only a legislative war-
rant, but, if its right is challenged on that ground, it must
be able to establish the fact that the enterprise in which

it is engaged is one by which a public use or benefit is to be subserved or promoted, so that such taking can be said to be for a public and not a private use.  The necessity or expediency of taking private property for public use, the instrumentalities through which it may be done, and the mode of procedure, are legislative and not judicial questions.  But, whether the proposed use thereof is in fact public, so as to justify its taking without the consent of the owner, has always been a question for the courts to determine, and, in doing so, they are not confined to the description of the objects and purposes of the corporation as set forth in its articles of incorporation, but may resort to evidence aliunde showing the actual business proposed to be conducted by it:  Lewis on Eminent Domain, § 158; *Matter of Niagara Falls & Whirlpool R. Co.*, 108 N. Y. 375 (15 N. E. 429); *Chicago & E. I. R. R. Co.* v. *Wiltse*, 116 Ill. 449 (6 N. E. 49).

2.  Now, in this case, from the findings of fact, it clearly appears that plaintiff is a corporation organized for the construction of a railroad for the transportation of freight and passengers, and therefore sections 3239 and 3240, Hill's Code, invest it with authority to exercise the power of eminent domain, if the use it intends to make of the property sought to be taken is in fact public.  Bearing upon this question, the findings are that it has already constructed five and a half miles of road, and is now and has been operating the same for the use and benefit of the general public in carrying freight and passengers, and there is nothing in the record anywhere to indicate that the road has ever been used or is intended to be used for any other or different purpose, or that it was built or intended for a logging road, or has ever been used for that purpose; or, in fact, that it is in any way connected with or a part of the mill enterprise; or, indeed, except by inference, that it belongs to the mill company.  We are, there-

fore, unable to say that the court was in error in holding
that the railroad of plaintiff is public so as to justify the
exercise in its behalf of the power of eminent domain.
The fact that it has not been fully completed between
the termini indicated in its articles of incorporation, or
that there is at present no town, city, or settlement, or
other railroad at its proposed southeastern terminus, or
that its proposed route is through a rough, mountainous,
and sparsely settled country, or that the plaintiff has not
yet fully equipped the road, or supplied itself with com-
plete and perfect terminal facilities, or that it has not
charged the passengers upon its railroad any fare, does
not affect its right to exercise the power of eminent do-
main. The question of public use is not determined, as a
matter of law, by any of these things, but by the fact that
the proposed road is intended as a highway for the use of
the public in the transportation of freight and passengers.
And it can make no difference that its use may be limited
by circumstances to a small part of the community. Its
character is determined by the right of the public to use it,
and not by the extent to which that right is exercised:
*De Camp* v. *Hibernia Railroad Co.*, 47 N. J. Law, 43; *Phillips*
v. *Watson*, 73 Iowa, 28 (18 N. W. 659); *Ross* v. *Davis*, 97
Ind. 79.

If every one having occasion to use the road as a pas-
senger or for transportation of freight may do so, and of
right may require the plaintiff to serve him in that respect,
it is a public way, although the number actually exercising
the right is very small. The findings of the court show
that the enterprise in which plaintiff is engaged, and for
which it requires the land in question, is of this character,
and therefore we have no alternative but to affirm the
judgment. In doing so, however, we do not desire to be
understood as holding that a railroad constructed by a mill
company for the evident purpose of transporting logs to

its mill can become a public highway, so as to justify the exercise of the power of eminent domain in its behalf, because of any declaration in its articles of incorporation to that effect, or on account of any right of the public to use it for the transportation of freight and passengers. No such question is presented by this record. The findings of the court by which we are bound negative such an inference, and this decision is based upon the facts as found by the court below. The judgment must therefore be affirmed.

*ı*                                         AFFIRMED.