## APEX TRANSPORTATION CO. *v.* GARBADE.

[52 Pac. 573.]

EMINENT DOMAIN. — A skidroad, built solely to facilitate the logging business of a private company, mainly passing through and terminating at each end in the land of the company, inaccessible to the public, and not connecting at any point with a public highway, is not a road for public use, within the contemplation of the statute of 1895.

COURTS — LEGISLATIVE QUESTION. — Although the legislature must determine the necessity and expediency of exercising the right of eminent domain, the question whether a proposed use is in fact public is to be determined by the courts, independent of the objects expressed in a charter or statute conferring the right to condemn: *Bridal Veil Lumbering Company* v. *Johnson*, 30 Or. 205, cited.

APPEAL — OMITTED EVIDENCE. — The consideration of a question will not be refused on appeal because the bill of exceptions does not contain all the evidence in relation thereto, where the evidence claimed to have been omitted is immaterial.

CONSTITUTIONAL RIGHTS TO EQUAL PROTECTION OF THE LAWS. — Const. U. S. Amend. 14, ₰ 1, declaring that no state shall make or enforce any law which shall deny to any person within its jurisdiction the equal protection of the laws, means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or classes in the same place and under like circumstances.

DUE PROCESS OF LAW — RIGHT TO JURY TRIAL. — The act of a state court in taking a case from a jury by deciding that on the admitted facts there

cannot be a recovery, is not depriving the plaintiff of the due process of law guaranteed by the fourteenth amendment of the federal constitution, for the error, if there was any, was in the administration of the law, and not in the law itself.

FEDERAL QUESTION — WRIT TO UNITED STATES SUPREME COURT. — To justify granting a writ of error from a state court to the Supreme Court of the United States, under section 709, Rev. Stat. U. S. it must appear that some right under the constitution, laws or treaties of the United States was claimed at the trial and denied.

APPEALABLE ORDER. — A judgment of nonsuit entered in obedience to a mandate of the supreme court is not an order from which an appeal can be taken.

From Multnomah: HENRY E. McGINN, Judge.

The Apex Transportation Company attempted to condemn a right of way for a skidroad through the lands of T. A. Garbade, and he appealed from a judgment of $350 for the property seized.

REVERSED.

After a motion for a rehearing had been denied, the company presented an application for a writ of error to the Supreme Court of the United States.

WRIT DENIED.

The cause having been remanded to the circuit court with instructions to enter a nonsuit, such an order was duly made. Thereupon the transportation company again appealed, and respondent moved to dismiss the appeal.

APPEAL DISMISSED.

For Garbade there was a brief over the name of *Geo. W. P. Joseph*, with several oral arguments by *Mr. Frank Schlagel.*

For the Apex Transportation Company there was a brief over the names of *Dolph, Mallory & Simon,* and *George, Gregory & Duniway,* with several oral arguments by *Messrs. Joseph Simon* and *Ralph R. Duniway.*

Mr. Justice Bean delivered the opinion.

The Apex Transportation Company, a corporation organized for the construction of a skidroad (Laws, 1895, 6), brought this action against the defendant to condemn for its corporate use a right of way over certain lands belonging to him. The right to the relief demanded was controverted on the ground, among others, that the use for which the land sought to be condemned was required by the corporation was not a public, but a private, use. This question was raised by motion for a nonsuit, and also by a request for an instruction to the jury. The statute under which the action was brought (Laws, 1895, 6), so far as material to this question, provides that " any corporation organized for the purpose * * * of transporting timber, lumber, or cordwood * * * shall have the right to construct and operate railroads, skidroads, tramways, chutes and flumes between such points as may be indicated in their articles of incorporation, and shall have a right to enter upon any land between such points for the purpose of examining, locating and surveying the line of such railroads, skidroads, tramways, chutes and flumes, * * * and shall have power to appropriate so much of said land as may be necessary for the same, not exceeding sixty feet in width, and may maintain an action for the appropria-

tion thereof in the manner and form as by law provided by any railway, * * * and with like effect"; and that "all such * * * skidroads, tramways, chutes and flumes shall be deemed to be for the public benefit, * * * and shall afford to all persons equal facilities in the use thereof for the purposes to which they are adapted, upon payment or tender of reasonable compensation for such use." The articles of incorporation of the plaintiff declare that it is organized for the purpose of transporting logs, timber, lumber, cordwood, etc., by means of a skidroad from a certain log pond, in section 24, township 1 N., range 5 E., in a southeasterly direction to the center of section 27, township 1 N., range 6 E., a distance of about four or five miles. At the time action was commenced, it owned and had in operation such a road for a short distance from the log pond referred to; but the route of the principal part of its proposed road had not been surveyed or located, or indeed definitely determined. The road built and proposed to be constructed is the ordinary logging dirt road, with timbers from eight to twenty inches in diameter laid crosswise, at intervals of seven or eight feet, and imbedded in the earth so that two or three inches project above the surface, thus forming a track or way upon which logs or heavy timbers may be more readily drawn by logging teams than upon the ground.

The facts and circumstances from which to determine the nature of the use to which the plaintiff proposes to put the land sought to be taken are practically undisputed, and we feel constrained to say that, in

our judgment, they do not show such a use as would authorize the taking of private property without the consent of the owner. It appears quite clearly that the plaintiff company was organized, and the proposed road is to be constructed and operated as an instrumentality, to facilitate the business of the Bridal Veil Lumbering Company, a private corporation, engaged in operating a sawmill, and not for a public use or for the accommodation or benefit of the general public. Both termini of the proposed road, as designated in the articles of incorporation of the plaintiff, are on and entirely surrounded by the property of that company, and the public has no access thereto except over private land. It begins at the log pond of the company, from which point it is to extend into and through a rough, heavily timbered, mountainous country, in which such company owns large tracts of land, and will not connect with nor be accessible at any point by a public highway; and, when constructed, the only practical use to which it can be put will be the transportation of logs for this mill company, and for no other, as all logs transported over it must necessarily go into the log pond of the company, and from thence over a railroad owned by it to its mill, and there be cut into lumber before being carried further or reaching any market other than such company may afford. The only way of transporting lumber and heavy timber from the mill to a shipping point is by means of a flume about two miles long, and such logs and heavy timbers as are to be taken over the plaintiff's proposed skidroad cannot be carried therein. Under these circumstances, we think

it is manifest that the use to which the plaintiff proposes to put the land sought to be taken is private, and not public.

No declaration of the objects and purposes of the company in its character, or of the legislature in the act under which it is proceeding, can give it that character, so as to entitle it to exercise the high prerogative of sovereignty invoked in aid of its enterprise.    The necessity and expediency of taking private property for public use is a legislative question; but whether the proposed use is in fact public is always a judicial question, to be determined by the courts. And while it is difficult to give an exact definition of a public use, within the meaning of the constitution, and, as said by Mr. Justice Andrews in *Re Niagara Falls Railway Company*, 108 N. Y. 375 (15 N. E. 429), "it is easier to define it by negation than by affirmation," no rule founded on the adjudged cases can, we think, be so framed as to include the present case. The principles governing cases of this character are fully discussed and announced in Lewis on Eminent Domain, § 165 *et seq*; Thompson on Corporations, § 5593; Cooley on Constitutional Limitations, *532; *Bridal Veil Lumbering Company* v. *Johnson*, 30 Or. 205 (60 Am. St. Rep. 818, 34 L. R. A. 368, 46 Pac. 790); *Dalles Lumbering Company* v. *Urquhart*, 16 Or. 67 (19 Pac. 78); *Re Niagara Falls Railway Company*, 108 N. Y. 375 (15 N. E. 429); *In re Split Rock Cable Road Company*, 128 N. Y. 408 (28 N. E. 506); and note to *Beekman* v. *Saratoga Railroad Company*, 22 Am. Dec. 686.    And, within the doctrine of these and other authorities, which might be cited, we conclude that,

upon the facts of this case, the plaintiff is not entitled to maintain the action.

It is claimed by counsel for defendant that the bill of exceptions does not contain all the evidence bearing upon this question; but the trial judge has appended thereto a certificate that it contains all the evidence given or offered on the trial, and this is perhaps conclusive upon the question; but, whether it is or not, the evidence which it is claimed has been omitted from the bill of exceptions consists of certain maps and exhibits not material to the question under consideration.   It follows from these views that the judgment of the court below must be reversed, and the cause remanded, with directions to sustain the motion for nonsuit.

                                        REVERSED.


ON APPLICATION FOR WRIT OF ERROR.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion of the court.

This is an application for the issuance of a writ of error to the Supreme Court of the United States in the above cause.   The petition states that in the trial of said cause there was " drawn in question an authority exercised under the State of Oregon by the Supreme Court of the State of Oregon, on the ground that the same was repugnant to the fourteenth amendment to the constitution of the United States, and the decision was in favor of the validity of such authority so exercised under said state; also a right, title, privilege and immunity was claimed under the

fourteenth amendment to the constitution of the United States, and the decision was against the title, right, privilege and immunity specially claimed under the fourteenth amendment to the constitution of the United States." The assignments of error comprehend the two phases of the fourteenth amendment of the federal constitution, viz., that no state shall deprive any person of property without due process of law, and shall not deny any person the equal protection of the law. But, in so far as the latter condition concerns the matter in hand, it is not strenuously urged that it is available as furnishing grounds for granting the writ. The latter clause simply means, as stated in *Missouri* v. *Lewis,* 101 U. S. 22, "that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or classes in the same place and under like circumstances," and has relation more especially to legislative rather than judical action: *Marchant* v. *Pennsylvania Railroad Company,* 153 U. S. 380-388 (14 Sup. Ct. 894). If, however, it be considered applicable to judicial action, it does not appear in the application, or anywhere throughout the course of the trial and disposition of the cause, wherein the plaintiff has been denied the equal protection of any law accorded to another under like circumstances. This disposes of all but the first assignment,—that the plaintiff has been deprived of his property without due process of law.

The right to the writ of error, in so far as it concerns the present controversy, can only be claimed "where is drawn in question the validity of a statute

of, or an authority exercised under, any state, on the ground of their being repugnant to the constitution, treaties or laws of the United States, and the decision is in favor of their validity": Rev. St. U. S. § 709. The court's exercise of its authority is the subject of complaint, and it is claimed that such exercise was repugnant to the fourteenth amendment in the particular suggested. It is decided by *Chicago Railroad Company* v. *City of Chicago*, 166 U. S. 226 (17 Sup. Ct. 581), that a state may not by any of its agencies disregard the provisions of that amendment, and that the court may, by its rulings in submitting a case to the jury, so far disregard the rules of law governing the rights of property as to violate the spirit and intendment of the amendment. It cannot be claimed by plaintiff that its property is being taken without just compensation, as it is seeking to condemn, and not to prevent condemnation; but it is suggested that by taking the case from the jury the plaintiff has been deprived of the right of trial by that tribunal, and therefore has been deprived of due process of law. The right of trial by jury is guaranteed by the seventh amendment, and the objection is probably not well assigned as being in violation of the fourteenth amendment; but, conceding that it is, the plaintiff has not presented a case entitling it to the writ. Mr. Justice Harlan, in *Lent* v. *Tillson*, 140 U. S. 316 (11 Sup. Ct. 285), says: "Errors in the mere administration of the statute, not involving jurisdiction of the subject and of the parties, could not justify this court, in its re-examination of the judgment of a state court upon a writ of error, to hold that the

state had deprived, or was about to deprive, the plaintiffs of their property without due process of law." This doctrine was reaffirmed by the same learned justice in *Chicago Railroad Company* v. *City of Chicago*, 166 U. S. 226 (17 Sup. Ct. 581). In the latter case it was said that " many matters may occur in the progress of such cases that do not necessarily involve in any substantial sense the federal right alleged to have been denied, and in respect to such matters that which is done or omitted to be done by the state court constitutes only error in the administration of the law under which the proceedings were instituted." Such, to my mind, is clearly the situation of the present controversy. This court, in directing a nonsuit, but followed the constant practice prevalent here and in other state and national courts; and, if there was error committed, it constitutes but an error in the administration of the law under which plaintiff has sought to condemn a right of way across the premises of the defendant. The court declared, as it had done in the former and recent case of *Bridal Veil Lumbering Company* v. *Johnson*, 30 Or. 205 (60 Am. St. Rep. 818, 34 L. R. A. 368, 46 Pac. 790), that the necessity and expediency of taking private property for public use is a legislative question, but whether the proposed use is in fact public is always a judicial question, to be declared by the courts. The facts were practically admitted, and the court simply applied the established rule and took from the jury a matter of which they were precluded from taking cognizance.

But there is another impediment to granting the writ. The federal question was not opportunely raised.

It was taken for the first time in this court on motion for rehearing (which was decided orally), and this comes too late: *Texas Railway Company* v. *Southern Pacific Company*, 137 U. S. 48 (11 Sup. Ct. 10). As presented in the trial court, and at the hearing in this court, the questions involved were those of general law only, and not in any manner based or made dependent upon the constitution or laws of the United States. In order to present a case for federal cognizance, it is necessary that some right under the constitution or laws or treaties of the United States must be claimed in the state court, and the decision must be against the right. Neither of these conditions is disclosed by the record, and hence it cannot be truthfully certified that there was a federal question presented, resulting in an adverse ruling: *Brooks* v. *Missouri*, 124 U. S. 394 (8 Sup. Ct. 443). For these reasons the application for the writ is denied. If there was any doubt, I should be disposed to follow the usual practice, and resolve it in favor of a full and complete hearing in the tribunal of last resort. I am authorized to say that my associates concur in these views.

WRIT DENIED.

Decided October 31, 1898.

ON MOTION TO DISMISS SECOND APPEAL.
[54 Pac. 882.]

PER CURIAM. The motion to dismiss this second appeal must be allowed. It is attempted to be taken from a judgment of the court below directing a nonsuit in obedience to a mandate of this court regularly

issued in a cause over which it had jurisdiction. Such a judgment is not appealable. It is only from the judgments of the circuit courts that an appeal to this court will lie, and one entered in obedience to a mandate of this court is not such a judgment, but is practically a judgment of the appellate court. Upon the receipt of the mandate the trial court has no alternative but to enter the judgment as directed (Hill's Ann. Laws, § 546), and an appeal therefrom would be, in effect, an appeal to this court from one of its own judgments. If, for any reason, the mandate in this particular instance ought to have directed a new trial instead of a nonsuit, the matter should have been called to the attention of the appellate court by some appropriate proceeding, and cannot be raised by an appeal from a judgment entered in obedience to its mandate.

Counsel also claimed that the judgment of the appellate court to enforce which the mandate was issued in some way violates the constitution of the United States, but, if this is true, it in no way affects the question as to whether an appeal can be taken from a judgment of the trial court entered in obedience to such mandate. Motion allowed and appeal dismissed.

APPEAL DISMISSED.