Argued June 23, reversed July 25, objections to cost bill sustained in part October 10, rehearing denied October 10, 1922.

## STATE EX REL. *v.* HAWK ET AL.

(208 Pac. 709.)

**Eminent Domain—Power of Eminent Domain Dormant Until Called into Exercise by Legislative Authority.**

1. The power of eminent domain is inherent in the state, but lies dormant until called into exercise by express legislative authority.

**Eminent Domain—If the Power is not Exceeded or Abused, the Courts cannot Inquire into the Propriety of Exercising It.**

2. When the power to take private property for public use has been conferred by the legislature, it rests with the grantee to determine whether it shall be exercised, and when and to what extent it shall be exercised, provided, of course, that the power is not exceeded or abused, and courts cannot inquire into the motive which actuated the authorities, or enter into the propriety of constructing the particular improvement.

**Eminent Domain—Legislative Judgment as to Ownership is a Public Use not Conclusive, Though Entitled to Deference.**

3. In ascertaining what is a public use, the legislative judgment is not conclusive, but deference will be paid thereto.

---

2. Authorities discussing the question as to judicial power over the right of eminent domain are collated in a note in 22 L. R. A. (N. S.) 1.

Eminent Domain—Whether Proposed Use is a Public Use is Question
of Fact for the Courts.

4. The question of whether a proposed use is a public use is for
the courts to determine as a question of fact.

Eminent Domain—Statutes Strictly Construed to Effectuate Purpose
for Which Enacted.

5. While statutes providing for condemnation should be strictly
construed, they should be also construed so as to effectuate the pur-
pose for which they were enacted.

Eminent Domain—Statute Held to Authorize Proceeding to Condemn
Land for Public Use by the State.

6. Section 7089, Or. L., *held* to authorize a proceeding in the
name of the state for the condemnation of real property for a pub-
lic use when the necessity therefor is decided and declared in the
first instance by the proper state board, as against contention that
it is purely a statute of procedure and that independent legislation
is necessary to authorize an appropriation.

Eminent Domain—Measure of Damages for Land Condemned Stated.

7. In proceeding by the state to condemn land for a public use,
the measure of damages is the actual cash market value of the land
at the beginning of the action.

Appeal and Error—Admission of Evidence not Considered on Appeal
in Absence of Assignment of Error Complaining of Charge Sub-
mitting Such Issues.

8. The admission of evidence will not be considered on appeal,
in the absence of an assignment of error in regard to the charge
of the court submitting the issues to the jury.

Eminent Domain—Creation of New Board, Pending Condemnation
Proceeding by the State at the Instigation of Old Board, Held
not to Require a Substitution of Parties on the Record.

9. In an action to condemn land by the state by and through
the state board of fish and game commissioners, it was not necessary,
on the creation of a new board of fish and game commissioners
pending the action, by General Laws (Sp. Sess.) of 1920, page 13, to
have a new board substituted for the old one on the record.

Parties—Misjoinder of Parties not a Ground of Demurrer.

10. Under Section 68, Or. L., misjoinder of parties is not a
ground of demurrer.

Parties—Complaint Demurrable for Defect of Parties Only Where
Necessity of Other Parties Appears on Face of Complaint.

11. Under Section 68, Or. L., a demurrer for defective parties
lies only where it appears on the face of the complaint that the
presence of other parties is necessary.

---

4. What constitutes public use for which property may be taken
under eminent domain, see notes in 16 Am. St. Rep. 610; 2 Ann.
Cas. 50; 3 Ann. Cas. 1113; 4 Ann. Cas. 1175; 14 Ann. Cas. 903;
Ann. Cas. 1912D, 1002; Ann. Cas. 1918A, 203.

Uses for which power of eminent domain cannot be exercised, see
note in 102 Am. St. Rep. 809.

Eminent Domain—Purchasers of Part of Land Pending Condemnation Proceeding Could not Complain of Division of Damages as Between Vendors and Purchasers.

12.  Purchasers of a portion of the land pending condemnation proceedings by the state could not complain of a division of the damages between the vendors and the purchasers.

Eminent Domain—Right of State to Condemn Land not Affected by Amendment of Statute Pending the Proceeding.

13.  The right of the state to condemn land for a public use was not affected by the amendment of Section 7114, Or. L., by General Laws of 1921, page 742, after the institution of the action.

Eminent Domain—Legislature may Revoke or Change Statute Authorizing Exercise of Power of Eminent Domain.

14.  The legislature may revoke or change a statute authorizing the exercise of the power of eminent domain.

Eminent Domain—Statute Held to Preclude Condemnation of Land Bordering on "Streams."

15.  Section 7113, Or. L., withdrawing certain "streams and waters thereof" from appropriation and condemnation, held to preclude the condemnation of land bordering upon the streams, in view of Section 7114.

ON OBJECTIONS TO COST BILL.

Eminent Domain—State Liable for Attorney's Fees Where It Loses Condemnation Proceeding.

16.  Under Section 7105, Or. L., allowing defendant in condemnation proceeding attorney's fees where the judgment is for a greater amount than that offered by plaintiff before the action was commenced, the state is liable for attorney's fees where after judgment the state upon appeal was compelled to abandon the proceeding.

From Hood River: FRED WILSON, Judge.

Department 2.

This is a condemnation proceeding commenced on October 14, 1919, by the State of Oregon against defendants to appropriate 10.70 acres of land, more or less, together with an easement or right to use a certain road leading thereto situated in Hood River County, for use in connection with the propagation, hatching and feeding of salmon and other food fishes under the supervision of the board of fish and game commissioners. The proceeding was instituted upon the relation of Ben W. Olcott, I. N. Fleischner, F. M. Warren, Marion Jack and C. F. Stone, constituting

the state board of fish and game commissioners. The complaint is in the usual form, detailing facts showing that the property desired to be appropriated is for a public use. It is alleged, *inter alia*, that the defendant A. D. Hawk is the owner of the real property; that defendant Lucy M. Hawk is his wife; that the defendants, S. S. Mohler and H. B. Van Duser claim some title or interest in the real property; that it is necessary for the State of Oregon to acquire and own the land described in the complaint for the purpose mentioned together with the easement; and that the Oregon state board of fish and game commissioners has heretofore decided and declared such necessity and requested the attorney general to prosecute this action for the condemnation and acquisition of the property. The land is specifically described, and it is charged that the board had attempted to agree with Hawk for the purchase of the land and had offered him $100 per acre therefor, but had been unable to reach an agreement. The defendant, H. B. Van Duser was not served with a summons and never appeared in the case. Defendant Hawk defaulted.

The defendant S. S. Mohler interposed a demurrer to the complaint upon the grounds that there is a misjoinder of parties defendant, and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled.

The issues tendered by the defendants Mohlers in their answer, as stated in defendants' brief, are in substance as follows: (1) That they are the owners in fee simple of three and one-half acres being a portion of the lands described in the complaint together with adjoining lands. (2) That at the commencement of the action the plaintiff had no authority to

invoke the exercise of the power of eminent domain nor authority to declare the existence of any public necessity for the acquisition of the property. (3) That there was no law of the state declaring that lands for use in the maintenance of hatcheries and feeding stations in the propagation of fish were necessary for the use of the public. (4) That after the commencement of the action the law creating the board of fish and game commissioners was repealed, and whatever rights it may have had prior thereto were thereby terminated, and there had been no finding of necessity by any subsequent board for the acquisition of the lands sought to be condemned. (5) That the lands owned by the defendants Mohlers are located on the banks of Herman Creek, are supplied with an ample flow of clear, cold water, are available and adaptable for the establishment and maintenance of a commercial fish hatchery, and are of the reasonable value of $10,000, and if taken the remaining lands will be rendered useless. (6) That the defendants had no interest in common with the owners of the remainder of the tract sought to be condemned; and that the damages of defendants cannot be ascertained in this proceeding, and therefore there is a defect of parties defendant.

The evidence tended to show that about January 2, 1919, defendant Mohler commenced negotiations for the purchase of a portion of the land in question from defendant Hawk. After the institution of this action, about November 10, 1919, a deed therefor from Hawk and wife to Mohler was executed and thereafter recorded in Hood River County.

The question of damages was tried before the court and a jury. The jury rendered a verdict assessing Hawk's damages in the sum of $399.75 and assessing

Mohler's damages in the sum of $750. The court awarded Mohler costs and disbursements $29.80, and the further sum of $300 as reasonable attorney's fees in the action. A warrant having been drawn by the secretary of the State of Oregon on the state treasurer for the sum of $1,079.80 for damages, attorney's fees and costs in favor of defendants Mohler and wife, the court entered the usual judgment of appropriation. Defendants, S. S. Mohler and wife, appealed.          REVERSED. REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Arthur I. Moulton* and *Mr. Wm. P. Lord,* with an oral argument by *Mr. Moulton.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and. *Mr. Will S. Moore,* Assistant Attorney General, with an oral argument by *Mr. Moore.*

BEAN, J.—It is contended on behalf of defendant Mohler that the demurrer to the complaint raises the question whether the board of fish and game commissioners has authority to exercise the power of eminent domain; and that the act creating the board of fish and game commissioners did not declare the propagation of fish a public use. It should be noted at the outset that the plaintiff, State of Oregon, is exercising the power of eminent domain, and not the board of fish and game commissioners. The action is instituted by the state upon the relation of the board.

Section 7089, Or. L., so far as material here, provides as follows:

"Whenever it is necessary that the state of Oregon shall require any real property, water, watercourses,

and water and riparian rights, or any right or interest therein, for any public use, the necessity for such acquisition to be decided and declared in the first instance by the state board of commissioners, trustees, or other state board having direction of the state institution or department for which the real property, * * or interest therein is desired, * * if the owner thereof and said board having direction of the state institution or department for which the same is sought to be acquired, * * cannot agree upon the price to be paid for the amount of, or interest in his said real property, * * required for such public use, and the damages for the taking thereof, said board of commissioners, * * may and is hereby authorized to request the attorney-general to, and he shall when so requested, commence and prosecute in any court of competent jurisdiction, in the name of the state of Oregon, any necessary or appropriate suit, action or proceeding for the condemnation of said amount of or interest in said real property, * * required for said purposes, and for the assessment of the damages for the taking thereof * * . The procedure in said suit, action or proceedings shall be, as far as applicable, the procedure provided for in and by the laws of this state for the condemnation of land or rights of way by public corporations or *quasi*-public corporations for public use or for corporate purposes. * * ."

As we understand the argument and briefs of counsel on behalf of the answering defendants it is not claimed that the use for which the real property is sought to be condemned is not a public one. It is urged on behalf of defendants that "Section 7089, Or. L., does not declare that land for use for hatcheries in the propagation of fish is necessary for the use of the public."

1. The power of eminent domain is inherent in the state, yet it lies dormant until called into exercise by express legislative authority: Cooley's Constitutional Limitations (5 ed.), p. 666; 1 Lewis, Eminent

Domain (3 ed.), § 367; 3 Dillon, Municipal Corporations (5 ed.), § 1024; *Bridal Veil Lbr. Co.* v. *Johnson,* 30 Or. 205 (46 Pac. 790, 60 Am. St. Rep. 818, 34 L. R. A. 368); *Cincinnati* v. *Louisville etc. Ry. Co.,* 223 U. S. 390, 400 (56 L. Ed. 481, 32 Sup. Ct. Rep. 267, see, also, Rose's U. S. Notes); *In re Poughkeepsie Bridge Co.,* 108 N. Y. 483 (15 N. E. 601); *Tacoma* v. *State,* 4 Wash. 64 (29 Pac. 847); *Healy* v. *City of Delta,* 59 Colo. 124, 125 (147 Pac. 662); *Water Works Co.* v. *Burkhart,* 41 Ind. 364.

2. When the power to take private property for public use has been conferred by the legislature, it rests with the grantee to determine whether it shall be exercised, and when and to what extent it shall be exercised, provided, of course, that the power is not exceeded or abused. Courts cannot inquire into the motive which actuated the authorities, or enter into the propriety of constructing the particular improvement: 1 Lewis, Eminent Domain (3 ed.), § 370.

3. The question: What is a public use? is always one of law. Deference will be paid to the legislative judgment as expressed in enactments providing for an appropriation of property, but it will not be conclusive: Cooley's Constitutional Limitations (5 ed.), p. 666.

4. The question of whether a proposed use is a public one is for the courts to determine as a question of fact: *Bridal Veil Lbr. Co.* v. *Johnson,* 30 Or. 205, 209 (46 Pac. 790, 60 Am. St. Rep. 818, 34 L. R. A. 368); *Apex Transp. Co.* v. *Garbade,* 32 Or. 582, 587 (52 Pac. 573, 54 Pac. 367, 882, 62 L. R. A. 513).

"Once authority is given to exercise the power of eminent domain, the matter ceases to be wholly legislative. The executive authorities may then be allowed to decide whether the power will be invoked and to what extent, and the judiciary must decide whether

the statute authorizing the taking violates the constitutional rights of any person who contests the validity of the proceedings; and the fixing of the compensation is wholly a judicial question." 1 Nichols on Eminent Domain (2 ed.), § 19.

5. While statutes providing for condemnation should be strictly construed, they should be also construed so as to effectuate the purpose for which they were enacted: *Oswego, D. & R. Ry. Co.* v. *Cobb*, 66 Or. 587, 598 (135 Pac. 181).

6. It is contended by defendants that Section 7089, Or. L., is designed as a statute of procedure, and that independent legislation is necessary to authorize an appropriation of property for public use. With this contention we are unable to agree. While the section of the statute refers to procedure, it also is a plain legislative authorization of a proceeding in the name of the state for the condemnation of real property for a public use when the necessity for such acquisition is decided and declared in the first instance by the proper state board. This section provides ample power to institute and prosecute an action by the State of Oregon at the instigation of the board of fish and game commissioners. The board is thereby empowered to decide and declare in the first instance the necessity for the acquisition of the land, leaving it as a matter for the plaintiff, authorized to exercise the right of eminent domain, to show by proper allegations and proofs the necessity for such appropriation of the property sought to be condemned to such use, and for the court to determine the question, where the necessity is contested: Cooley's Constitutional Limitations (5 ed.), p. 663; 1 Lewis, Eminent Domain (3 ed.), §§ 367, 370; *Dallas* v. *Hallock*, 44 Or. 246 (75 Pac. 204); *Minn. Canal Co.* v. *Koochiching*

*Co.,* 97 Minn. 437 (107 N. W. 405, 7 Ann. Cas. 1182, 5 L. R. A. (N. S.) 638); *Minn. Canal & Power Co.* v. *Fall Lake Boom Co.,* 127 Minn. 28 (148 N. W. 561, 563). It cannot be conceded that the lawmakers of the state must enact a separate statute authorizing each appropriation of property for a public use. The contention of defendants would lead to such a requirement. The statute quoted from not only declares the power of the state to appropriate private property for a public use, but prescribes the method it shall be done by, which method was followed in the present case. The attempted appropriation of the property by the state is for a recognized public use.

7. The measure of damages applicable is the actual cash market value of the land at the date of the beginning of the action: *Oregon & California R. R. Co.* v. *Barlow,* 3 Or. 311; *Oregon R. & N. Co.* v. *Eastlack,* 54 Or. 196, 202 (102 Pac. 1011, 20 Ann. Cas. 692); *Portland-Oregon City R. R. Co.* v. *Penny,* 81 Or. 81, 85 (158 Pac. 404); *South Park Commrs.* v. *Dunlevy,* 91 Ill. 49, 52; *Schrieber* v. *Chicago & E. R. R. Co.,* 115 Ill. 340, 346 (3 N. E. 427).

8. Defendant Mohler was allowed to introduce testimony as to the market value of the land and also as to his purchase of the same and the price paid therefor. There is some mention in appellant's brief in regard to the evidence as to the price paid for the land by defendant. Such testimony having been admitted, and there being no assignment of error in regard to the charge of the court submitting the issues to the jury, there is no question before us in this respect.

9. The record discloses that the assistant attorney general did not ask leave of the court to continue the action in the name of the present members of the

state board of fish and game commissioners, and that
the defendants objected to the action proceeding
under the authority and direction of the board organ-
ized under Chapter 1, General Laws of Oregon, 1920,
without a new finding of necessity by the board. As
stated, the action was brought by the State of Oregon
by and through its agent, the state board of fish ·and
game commissioners, the board then having author-
ity to institute the action. Subsequent to the insti-
tution of the action, but before the trial, the legisla-
ture in 1920, created a new board of fish and game
commissioners. It is a well-settled rule that under
such circumstances the action proceeds in the name
of the state, and that upon a substitution of another
board or representative in place of the one authorized
to institute such an action at the time it was com-
menced, no substitution of parties upon the record is
necessary. In 1 C. J. 147, we read as follows:

"It has been held that a suit by or against a public
officer is not abated by the enactment, pending the suit,
of a statute abolishing the office and creating a new
one instead."

See also Section 38, Or. L.; *King* v. *Miller,* 53 Or.
53, 61 (97 Pac. 542); *Meyers* v. *Hot Lake Sanatorium
Co.,* 82 Or. 587, 589 (161 Pac. 697). The State of
Oregon is the plaintiff, and there was no necessity
for a substitution of a party by reason of a change
in the board of fish and game commissioners.

10. Appellants claim there was error on the part
of the court in overruling the demurrer, especially
that part based upon the ground "that there is a mis-
joinder of parties defendant in the complaint and
that there is a defect of parties thereto." The
grounds of demurrer are set forth in Section 68,
Or. L. Misjoinder of parties is not one of them.

11. A demurrer for defect of parties lies only where it appears on the face of the complaint that the presence of other parties is necessary. It does not appear from the complaint that there is any other necessary party to this proceeding. The answer does not disclose the name of any other party who should have been joined as defendant, nor is the necessity for including such other party otherwise shown by the record. The demurrer was therefore properly overruled: *State* v. *Metschan,* 32 Or. 372, 382 (46 Pac. 791, 53 Pac. 1071, 41 L. R. A. 692); *Crawford* v. *School Dist. No. 7,* 68 Or. 388, 392, 393 (137 Pac. 217, Ann. Cas. 1915C, 477, 50 L. R. A. (N. S.) 147); *Dias* v. *Bouchaud,* 10 Paige (N. Y.), 445.

12. The action could be instituted against the owner of all the land sought to be appropriated at the time the action was commenced. Defendant Mohler obtained title to a portion of the land subsequent to the time the proceeding was instituted. He therefore took title to the property subject to the proceedings then pending. The Mohlers having been made defendants in the action their interest in the land could appropriately be protected in the proceeding. They appeared in the action, and by answer set forth their interest in a portion of the land by virtue of the conveyance from the Hawks, and their claim for damages if the same should be appropriated. Their testimony detailed the value of their land sought to be taken and the damage to the remainder of their tract. The Mohlers' rights were not prejudiced by a division of the damages between the Mohlers and Hawks. The court, by this method, merely submitted to the jury the issue tendered in the answer of the Mohlers and testified to on their behalf. Appellants have no reason to complain in that regard.

In *Houston* v. *Traction Co.,* 69 N. J. L. 168, at page 170 (54 Atl. 403), the court stated:

"In *National Ry. Co.* v. *Easton & Amboy R. R. Co.,* 36 N. J. L. 181, in proceedings to condemn, under charter provisions similar to these, Mr. Justice DEPUE said: 'The subsequent transfers of the legal title by conveyances made after the proceedings were commenced by presenting the application cannot impair the regularity of the proceedings which were then in conformity to the law.'

"It has been held that where notice of condemnation proceedings has been given to the owner of the land, his grantee *pendente lite* is not entitled to notice of such proceedings, nor of subsequent proceedings. *Plumer* v. *Wansan Boom Co.,* 49 Wis. 449. Also, that parties acquiring rights in lands pending proceedings for their condemnation for railroad purposes will be deemed to have notice thereof and will take subject to the award. *Trogden* v. *Winona & S. P. Ry. Co.,* 22 Minn. 198."

It is further contended on behalf of answering defendants that if Section 7089, Or. L., authorizes the condemnation of property for a public use at the instigation of the fish and game commissioners, such power or authority has been withdrawn as to the property in question by virtue of Chapter 36, Laws of 1915, being Sections 7113 and 7114, Or. L. Section 7113 provides as follows:

"*Certain Streams Along Columbia River Highway Withdrawn from Appropriation and Condemnation.* The following streams and waters thereof forming waterfalls in view of, or near, the Columbia River Highway, from Sandy River to Hood River, are herewith withdrawn from appropriation or condemnation, and shall not be diverted or interrupted for any purpose whatsoever, except as hereinafter mentioned, to-wit: * * Herman Creek. * * All in Hood River County."

Section 7114 provides:

"*Vested Rights not Affected.* This act shall not prevent the condemnation for public park purposes of any lands through which any of said streams flow, nor affect vested rights or the rights of riparian proprietors of such lands in, or to the waters of said creeks or streams."

13. The latter section was amended by the legislature, Chapter 373, General Laws of Oregon 1921, page 742. This amendment was after the institution of this action, and does not affect the present case.

14. Unquestionably the legislature may revoke or change a statute authorizing the exercise of the power of eminent domain: 1 Lewis, Eminent Domain (3 ed.), § 380.

15. The act of 1915 was passed, as its title indicates, "to preserve the scenic beauty of certain waterfalls and streams in view of, or near the Columbia River Highway." The question arises as to the purport of this act. It is clear that the "streams and waters thereof" mentioned in the act are withdrawn from appropriation or condemnation. The act also inhibits the diversion or interruption thereof for any purpose except for public parks. Section 2 of the act (Section 7114, Or. L.) indicates that the prohibition extends to, or affects the condemnation of lands through which any of such streams flow except for public park purposes.

Herman Creek is a small non-navigable stream flowing into the Columbia River in Hood River County. The use of the words "streams and the waters thereof" indicates that something more than the water is intended. The definition of a stream, or watercourse, has caused the courts some trouble. A stream has sometimes been defined thus: "A stream of water

consists of bed, banks and water. * * ": 7 Words & Phrases, 6684, citing *Miller* v. *Black Rock Springs Imp.*, 99 Va. 747 (40 S. E. 27, 30, 86 Am. St. Rep. 924).

"A watercourse is defined by BIGELOW, J., as 'a stream of water usually flowing in a definite channel, having a bed or sides or banks, * * .' (*Luther* v. *Winnisimmet Co.*, 9 Cush. 174." *Simmons* v. *Winters*, 21 Or. 35, 39 (27 Pac. 7, 28 Am. St. Rep. 727).

"A definite channel having a bed and sides or banks is an essential requisite to a stream": 30 Am. & Eng. Ency. of Law, p. 349.

The word "streams" in the act in question was employed by the lawmakers as embracing the waters and the beds and banks of the streams, and in connection with the lands over which such streams flow. The board as officials of the state are bound by the act.

In 1 Lewis, Eminent Domain (3 ed.), Section 70, we read:

"Running streams consist of a well-defined channel with sides or banks, in which water habitually flows, though it need not flow continuously. Some streams are small and incapable of navigation for any purpose. All the authorities agree that such streams are wholly private property and that the title of the riparian owner extends to the middle of the stream."

It is alleged in the answer that the land in question is located on the banks of Herman Creek, and is supplied with an ample flow of clear, cold water. The complaint does not disclose that the land involved is located on Herman Creek. It is shown by the testimony on behalf of the state that the board of fish and game commissioners desire to use the land in question for the hatching, propagation and feeding of food fishes by diverting the water from Herman Creek through feeding grounds and ponds on the land, and

that the land and water are necessary for such public use. It appears that the land would not be suitable for such use without the diversion and use of the water in connection therewith. It is urged by defendants that as the statute does not permit the diversion of the water no public use of the land is shown.

It seems to us that the act of 1915, is a plain revocation of authority for the condemnation of land in connection with, or bordering upon the streams mentioned in the act. The land in question, or at least a portion thereof, such as the bank and bed of the stream, is so connected with Herman Creek that the land cannot be appropriated or condemned without an interference with the waters of the stream in contravention of the statute as it existed at the date of this action. In order to appropriate and condemn land bordering on Herman Creek for the purpose of using the same together with the waters of such stream, it is necessary to apply the amendment of 1921, or some such law, which cannot be done in this case. The statute did not authorize this condemnation proceeding.

It follows that the judgment of the Circuit Court must be reversed. It is so ordered.        REVERSED.

BURNETT, C. J., and HARRIS and MCCOURT, JJ., concur.

Objections sustained in part October 10, 1922.

## ON OBJECTIONS TO COST BILL.

(209 Pac. 607)

For appellants there was a brief over the names of *Mr. Arthur I. Moulton* and *Mr. W. P. Lord,* with an oral argument by *Mr. Moulton.*

For respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. W. S. Moore,* Assistant Attorney General, with an oral argument by *Mr. Moore.*

BEAN, J.—The respondent has filed objections to the cost bill of appellants herein, consisting of objections to the amount claimed for printing briefs and objections to the allowance of attorney's fees by the judgment of the trial court in the sum of $300.

Upon consideration of the objections, it is ordered that the costs and disbursements be taxed in favor of the appellants, S. S. Mohler and Clara D. Mohler, and against the respondent as follows:

| | |
|---|---|
| Trial fee | $  6.00 |
| Clerk's fee (filing transcript) | 15.00 |
| Clerk's fee (comparing transcript) | 2.50 |
| Prevailing fee | 10.00 |
| Printing brief (51 pages, including covers) | 63.75 |
| Printing reply brief (28 pages including covers) | 35.00 |
| Printing abstract of record | 35.50 |
| R. T. Yates (transcript of record) | 60.00 |

Total ........$217.75

Plaintiff objects to the attorney's fee as fixed at the trial in the Circuit Court and allowed defendants, S. S. Mohler and Clara D. Mohler "for the reason that the same is not authorized by law."

This cost bill is filed in a condemnation case. The law governing costs and disbursements, including a reasonable attorney's fee in such cases, is contained in Section 7105, Or. L., and reads as follows:

"The costs and disbursements of the defendant, including a reasonable attorney's fee to be fixed by the court at the trial, shall be taxed by the clerk and recovered from the corporation, but if it appear that such corporation tendered the defendant before commencing the action an amount equal to or greater than that assessed by the jury, in such case the corporation shall recover its costs and disbursements from the defendant, but the defendant shall not be required to pay the plaintiff's attorney fee."

16. It has been determined by this court in the case of *State* v. *Ganong,* 93 Or. 440 (184 Pac. 233), that the state is liable in such a proceeding, under certain conditions, for a reasonable attorney's fee, which must be established by a proper allegation as to a reasonable amount, and also by proof. In that case Mr. Justice HARRIS, in considering the section of the statute quoted above, at page 455 of the opinion used the following language:

"In other words, the plaintiff must, aside from the exceptions named in the statute, pay the costs and disbursements of the defendant; and if there has been a verdict by the jury the plaintiff must also pay a reasonable attorney's fee: *Warm Springs Irr. Dist.* v. *Pacific Livestock Co.,* 89 Or. 19 (173 Pac. 265). The trial of an action in which land is condemned for a public use is followed by a judgment which is made up of two distinct parts: One, the part which relates to the value of the land, the plaintiff must pay only in the event the land is actually taken; while the other, the part which relates to the costs and disbursements, must, in all cases where the land owner is entitled to costs and disbursements, be paid at all events, regardless of whether the plaintiff does or does not take

the land. * * Obviously it was the purpose of the legislature to compel the payment of a reasonable attorney's fee if a condemnation action proceeded as far as a verdict; and in order to accomplish that purpose the lawmakers directed that the amount of a reasonable attorney's fee should be included with and become a part of the costs and disbursements, because by including the item for the attorney's fee with the costs and disbursements the defendant could enforce the collection of the attorney's fee if the plaintiff declined to take the land after the jury fixed its value.''

No more cogent reason exists why the plaintiff in such a case should not pay a reasonable attorney's fee, where after a verdict and judgment the plaintiff upon an appeal is compelled to desist from taking the land, than where the plaintiff declines to take the property.

The Mohlers alleged in their answer that the sum of $1,000 was a reasonable amount to be allowed by the trial court as compensation to these defendants, for the expenses of procuring counsel to defend the action, and supported such allegation by proof. The trial court fixed the amount of such attorney's fees at $300, and the clerk included that amount in taxing the costs and disbursements amounting to $29.80 in addition thereto. The trial court adjudged that defendants, the Mohlers, were entitled to their costs and disbursements so taxed and the further sum of $300 ''which the court fixes to be allowed them in this action''; and that plaintiff in addition to the amount awarded said defendants as damages pay to them such costs and attorney's fee. The Mohlers appealed from that part of the judgment against them, of March 16, 1920, adjudging the compensation awarded to them sufficient, and from the judgment of May 13, 1920, ap-

105 Or.—22

propriating the land of said defendants to the State of Oregon.

We do not understand from the record that the defendants appealed from that part of the judgment in their favor for costs and disbursements including the attorney's fee of $300. The plaintiff did not appeal, and no error in regard to such allowance is assigned. Regardless of this condition of the record, and viewing the matter upon its merits, the section of the statute above quoted provides that "the costs and disbursements of the defendant, including a reasonable attorney's fee to be fixed by the court at the trial" shall be taxed and recovered. This, as we have held, contemplates a trial of the main case. Such result would be obviated if it appeared that before commencing the action the plaintiff tendered the defendant an amount equal to or greater than that assessed by the jury. This fact did not appear upon the trial of the case. The jury awarded these appellants more damages than plaintiff had offered them. These defendants upon appeal were successful in defeating the action for the reason that the right to condemn the property involved had been withdrawn by the statute.

Upon a trial being had and a verdict rendered in such a proceeding, it would seem that under the statute, where the defendant recovers more compensation than tendered, or defeats the action, the defendant is entitled to costs and disbursements including a reasonable attorney's fee as fixed by the court at the trial.

It would not be a fair application of the statute to require such a defendant to waive his right to contend that his property could not be condemned in the action, in order that he be allowed compensation for expenses of an attorney which the plaintiff has com-

pelled him to incur. If two proceedings like the present one should be prosecuted against these defendants without allowing for the expense of attorney's fees · for the defense, the defendants would practically lose the value of their land sought to be taken. The purpose of the statute in question is that the owner of land shall not be pauperized by condemnation proceedings, and that his property shall not be taken for a public use without just compensation. A party should not be penalized when he is successful upon appeal: *Wormely* v. *Mason City Ry. Co.*, 120 Iowa, 684, 688 (95 N. W. 203).

That part of the judgment of the trial court awarding defendants, S. S. Mohler and Clara D. Mohler, costs and disbursements in this action taxed at $29.80, and the further sum of $300 which the court fixed as a reasonable attorney's fee to be allowed them in this action, and ordering that plaintiff pay the same to the above-named defendants, should not be disturbed, and is affirmed.

It is not appropriate or necessary to tax such attorney's fees in this court.

> Objections Sustained in Part. Rehearing Denied.