## County Use of Liquid Fuels Tax Fund

ANNE X. ALPERN, Attorney General, ALAN M. RUBEN, Deputy Attorney General, and HARRINGTON ADAMS, Deputy Attorney General, February 16, 1961.—You have asked our opinion as to whether certain items may be properly charged against the county liquid fuels tax funds held by the several counties of the Commonwealth under the provisions of the Act of May 21, 1931, P. L. 149, as amended, 72 PS §§2611*a*-2611*z*, supp., known as The Liquid Fuels Tax Act. Specifically, you ask, may a county use the funds for the following purposes:

1. To satisfy the county's obligation to pay the costs and fees of viewers who assess the damages sustained by owners of land taken for county road purposes.

2. To purchase equipment such as trucks to be used primarily in the construction and maintenance of county roads, but also to be used in other activities.

3. To construct, reconstruct, maintain and repair highway approaches to county bridges when such approaches are owned and maintained either by the Commonwealth or a political subdivision within the county.

The Liquid Fuels Tax Act imposes a permanent State tax upon all liquid fuels used or sold and delivered by distributors within the Commonwealth. The statute provides that approximately one sixth of the revenues from this tax is to be paid to the counties of the Commonwealth. Thereafter, each county is to maintain the proceeds in a special fund designated as the "County Liquid Fuels Tax Fund." The counties may draw upon the fund to pay for, inter alia:

". . . construction, reconstruction, maintenance and repair of county-owned roads, highways and bridges, property damages, . . .": 72 PS §2611*j*(*a*) supp.

Within the scope of this authority, a county may properly charge against the fund its purchases of road

building equipment and its expenditures for the construction and maintenance of noncounty highway approaches to county bridges.

A county may not, however, utilize the fund in order to defray the expenses of viewers' proceedings.

### Viewers' Fees and Costs

The compensation of viewers is, indeed, an expense necessarily incurred in connection with the taking of land for county public road purposes. However, the act does not permit all costs of condemnation proceedings to be paid out of the fuels tax fund. The fund is available only for the payment of such expenses as would qualify as "property damages."

In the law of eminent domain, this phrase, "property damages," refers to extent of the interest in land taken by the condemning authority. E.g., Pennsylvania Company for Insurances on Lives and Granting Annuities v. Philadelphia, 351 Pa. 214, 40 A. 2d 461 (1945) ; Eldred Drainage and Levee District v. Wilcoxon, 365 Ill. 249, 6 N. E. 2d 149, 151 (1936).

In fact, neither the Commonwealth nor any political subdivision has any liability to reimburse the condemnee for condemnation proceedings costs absent specific legislation to the contrary: State v. Miller Home Development, Inc., 243 Minn. 1, 65 N. W. 2d 900 (1954) ; Deneen v. Unverzagt, 225 Ill. 378, 80 N. E. 321 (1907) ; State v. Hawk, 105 Ore. 319, 209 Pac. 607 (1922).

While The County Code of August 9, 1955, P. L. 323, 16 PS §2409(b), is such a statute declaring that a county is to bear the cost of a view to assess the damages sustained by the owner of land taken for a public road (see also The General Road Act of June 13, 1836, P. L. 551, 36 PS §1852), nevertheless, it is also clear that under The County Code the members of boards of view are, in effect, public officers whose

salaries are to be paid out of the county treasury:
16 PS §§1101-1106, and §§1623-1624. See, even under
prior law, Lewis v. Adamson, 10 D. & C. 706 (1927).
Apparently, therefore, compensation of viewers can no
longer be considered as even a "cost" of condemnation
proceedings: Drum, Law of Viewers in Pennsylvania,
§254, at 334 (1940). It follows that the liquid fuels
tax fund may not be used to pay the costs and fees
of county viewers.

### Road Building Equipment

A second permitted use of the county liquid fuels
tax fund is for the purpose of "construction, recon-
struction, maintenance and repair of county-owned
roads." This authorization is broad and inclusive.
Reimbursement is not limited to expenditures made
for materials and labor directly involved in road build-
ing and, therefore, the cost of equipment used in
transporting and fixing construction materials in
place may be properly charged to the fund. Similar
language in the highway construction statutes of other
States have been interpreted in like manner. Thus,
the term "construction and maintenance," said the
Supreme Court of Kentucky, has a meaning broad
enough to include all matters connected with and inci-
dental to the construction and maintenance of an ef-
ficient road system: Grauman v. Department of High-
ways, 286 Ky. 850, 151 S. W. 2d 1061 (1941).

In Grauman, the purchase by the Department of
Highways of warning signals to promote the safety
of the traveling public was held to be a legitimate
expense "properly chargeable to construction and
maintenance of the highway": Grauman v. Depart-
ment of Highways, 151 S. W. 2d 1061, at 1063. Cf.
Opinion of the Justices, 101 N. H. 527, 132 A. 2d
613, 616 (1957).

That any road building equipment so purchased may not be devoted exclusively to county road purposes is of no moment. There is no requirement that such equipment must stand idle during periods when it is not needed. It is sufficient that the equipment is purchased for use in county road construction and maintenance activities and available whenever necessary in connection therewith.

### Construction and Repair of Highway Approaches to County Bridges

The Liquid Fuels Tax Act, as we have seen, permits use of funds held by the counties to pay for the "construction, reconstruction, maintenance and repair of county-owned . . . bridges."

The highway approach to a bridge is such a wholly inseparable and indispensable adjunct to the physical structure that the approach and the bridge may for most purposes be considered as one and the same.

Their unitary nature was recognized by our Superior Court in concluding that the Public Utility Commission's jurisdiction over bridges implies similar control over the highway approaches thereto:

"It has been expressly recognized both by statute and in our decisions that approaches to an overhead bridge are a necessary part thereof as they afford the only means of access; without them this bridge is incomplete and useless": Pittsburgh and Shawmut Railroad Company v. Pennsylvania Public Utility Commission, 141 Pa. Superior Ct. 233, 235, 14 A. 2d 903 (1940).

Cf. Luzerne County v. Department of Highways, 77 D. & C. 52 (1950), (bridge connecting a borough street with township road, both of which terminated in a State highway, was an integral part of the State highway system, and, therefore, the Department of Highways was responsible for its maintenance).

So also, for purposes of construction and repair, the interrelationship of a county-owned bridge and its noncounty-owned highway approaches, impels the conclusion that both are embraced within the purview of the statutory provision here under consideration.

We are, therefore, of the opinion, and you are accordingly advised, that the county liquid fuels tax fund may be utilized (1) for the purpose of purchasing road building equipment, including trucks used primarily in the construction of county roads, and (2) for the construction, reconstruction, maintenance and repair of highway approaches to county bridges when the approaches are owned and maintained either by the Commonwealth or a political subdivision of the county. The county liquid fuels tax fund may not, however, be charged with the payment of viewers' costs and fees incurred in land damage proceedings involving county roads.